UNITED BILT HOMES, INC. *v.* Charles SAMPSON

92-424                                          832 S.W.2d 502

Supreme Court of Arkansas
Opinion delivered June 22, 1992

*Tom Tanner*, for appellant.

*Mike Wilson*, for appellee.

ROBERT L. BROWN, Justice. Following a bench trial, the appellant, United Bilt Homes, Inc., was assessed compensatory damages in the amount of $12,191.28 for tortious interference with a contract and punitive damages in the amount of $5,000. United Bilt appeals on two grounds: a) there was no breach by United Bilt of its agreement with Sampson; and b) punitive damages are not available for breach of contract.

We disagree and affirm on both points.

The facts of this case involve a fire at Sampson's house, subsequent repairs, and the use of insurance proceeds as payment

for the repair work. In July 1987, Sampson bought a repossessed, unfinished house "as is" from United Bilt, which retained a mortgage, and lived there until a fire caused extensive damage on January 25, 1990. An insurance adjuster investigated the resulting claim and made a repair estimate of $18,191.28. Sampson and United Bilt agreed to the amount in the estimate, and that amount was paid by the fire insurance carrier to United Bilt, the loss payee under the policy. The insurance check required the endorsement of both Sampson and United Bilt. United Bilt agreed that Sampson could proceed to make the repairs, and, based on that agreement, Sampson endorsed the check. United Bilt then placed the check proceeds in escrow.

Sampson hired Elmer Knox to do the repair work, and United Bilt subsequently advanced $6,000 for materials, leaving $12,191.28 in escrow. Knox completed the repairs but, upon inspection, United Bilt presented a punch list on July 18, 1990, necessitating additional work. Knox performed the work, but United Bilt again refused payment and presented a second punch list on August 15, 1990. Knox completed the second list. Sampson testified that there were three punch lists and that he refused to turn the last punch list over to Knox because he was satisfied with Knox's work.

United Bilt still denied payment and required more work from Knox. As a result of United Bilt's refusal to pay, Knox sued Sampson for breach of contract. Sampson, in turn, impleaded United Bilt, alleging tortious interference with his contract with Knox and seeking compensatory and punitive damages. Following a bench trial on May 20, 1991, the circuit court found for Knox on his complaint and for Sampson on his third-party complaint. Judgment was entered on July 9, 1991, and Knox was awarded damages against Sampson of $12,550.84. Sampson was then awarded compensatory damages against United Bilt of $12,191.28 and punitive damages of $5,000. The court also awarded Sampson pre-judgment and post-judgment interest and attorney's fees against United Bilt.

United Bilt's arguments on appeal are tied to its theory that two contracts existed in this matter. The first contract was one between Sampson and Elmer Knox for the repairs to the home. In the second contract, Sampson agreed to make all repairs in the

insurance carrier's estimate in exchange for the insurance proceeds. United Bilt argued at trial that Sampson, through his contractor, Knox, refused to do this and was, therefore, not entitled to payment. Specifically, United Bilt argued, among other things, that the sheetrock was not installed in all bedrooms, new exterior doors and cabinets were not built, a forty-gallon water tank was replaced with a thirty-gallon tank, and the quality of work was generally low.

Knox and Sampson countered that Knox did more painting than ordinary (four coats); that he added interior doors that had not been in the house in 1987; that he installed additional kitchen cabinets as well as baseboards, door trim, and window sills; that he did all of the required sheetrock work; and that he replaced some shutters and two windows. According to Knox, he did not install a heating unit because the house did not have one before the fire, but he installed a thirty-gallon water tank because that is what the house previously had.

The circuit court found that the two agreements urged by United Bilt were, in fact, made. The court also found that the repairs to Sampson's house had been completed and were done in a good and workmanlike manner. The issue of completion of repair work in a satisfactory manner was clearly one of fact for the circuit court to resolve. *See Wilson* v. *Allen*, 305 Ark. 582, 810 S.W.2d 42 (1991). The court found that Sampson had performed his part of the bargain by retaining Knox to do the work and that Knox performed satisfactorily. We cannot say that this finding was clearly erroneous.

We next turn to United Bilt's argument that a breach of its agreement with Sampson did not support an award of punitive damages. It is clear that the circuit court found that United Bilt did more than breach its contract with Sampson. It also found that United Bilt "knew or ought to have known that its conduct would naturally result in damage to [Sampson], but it persisted in reckless disregard of the consequences." The question left for this court to decide is whether the evidence and testimony offered at trial constituted substantial proof of tortious interference with an existing contract. We conclude that Sampson did prove a case in tort.

The principle has long endured in the law that a third

party who intentionally and with malice interferes with the contractual relations of another incurs liability for his action in tort. *L.L. Cole & Son, Inc.* v. *Hickman*, 282 Ark. 6, 665 S.W.2d 278 (1984); *Lumley* v. *Gye*, 119 Eng. Rep. 749 (Q.B. 1853); *see also*, generally, Prosser, *Law of Torts*, § 129, pp. 927, *et seq.* (4th Ed. 1971). Arkansas has recognized wrongful interference with a contract as an actionable tort for nearly a century. *See Mahoney* v. *Roberts*, 86 Ark. 130, 110 S.W. 225 (1908); *see also Mason* v. *Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969).

■ Underlying the tort is the premise that a person has a right to pursue valid contractual and business expectancies unmolested by the wrongful and officious intermeddling of a third party. *Walt Bennett Ford, Inc.* v. *Pulaski County Special School District*, 274 Ark. 208, 624 S.W.2d 426 (1981); *Mason* v. *Funderburk, supra.* The elements of tortious interference which must be proved are: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *W.E. Long Co.* v. *Holsum Baking Co.*, 307 Ark. 345, 820 S.W. 2d 440 (1991); *Mid-South Beverages, Inc.* v. *Forrest City Grocery Co., Inc.*, 300 Ark. 204, 778 S.W.2d 218 (1989).

In the case before us, each of the four necessary elements was clearly established at trial through testimony and exhibits. A contract existed between Sampson and Knox for Knox to do the repair work and for Sampson to pay him. United Bilt knew about the contract and knew that Knox had done additional repairs based on at least two United Bilt punch lists. United Bilt's demand for additional work from Knox and its refusal to pay over the insurance proceeds plainly caused a breach of the contract between Sampson and Knox because Sampson could not pay his contractor. This led to Knox's lawsuit against Sampson. Lastly, Sampson was damaged by United Bilt's actions. He could not move back into his house for more than a year and was forced to incur the cost of renting an apartment. He was threatened by United Bilt with a foreclosure suit on the mortgage. And he was liable on his contract with Knox for $12,500.84.

■ By wrongfully withholding the escrow funds, United Bilt prevented Sampson from performing his contract with Knox. This constituted sufficient interference. Prosser in discussing interference by prevention of performance says:

> Beyond this it may be said that actual inducement [of breach] is not necessarily required at all and that interference with contract may be quite sufficient for liability, provided always that it causes harm and that the interference was unjustified. Thus no actual repudiation of the contract is necessary for liability, and it is enough that the contract performance is partly or wholly prevented, or made less valuable, or more burdensome by the defendant's unjustified conduct.

Prosser & Keeton, *Law of Torts*, § 129, p. 991 (5th Ed. 1984). Similarly, United Bilt did not actually repudiate the contract between Sampson and Knox but its conduct unquestionably was unjustified. It caused harm to Sampson, prevented his performance, and denied him the benefits of his contract with Knox in the form of a finished home.

■ In sum, though the repairs had been completed in a workmanlike manner, United Bilt refused payment to Sampson, knowing full well that Sampson owed the money to Knox. United Bilt had Sampson and Knox in a vise, and it used the pressure of withheld money to have work done on the home that exceeded the repairs initially contemplated. Sampson argued at trial that United Bilt did this to enhance the value of its collateral which was the mortgaged house. Whatever the reason, this was wrongful interference by United Bilt and forced Sampson to breach his contract with Knox and incur damages. We hold that United Bilt's conduct was tortious interference with an existing contract. We further hold that the circuit court's award of punitive damages was not in error. *See L.L. Cole & Son, Inc.* v. *Hickman, supra.*

Affirmed.