STATE of Arkansas, Department of Finance and Administration
*v.* Debora STATON

96-215                                                        934 S.W.2d 478

Supreme Court of Arkansas
Substituted Opinion upon Granting of
Rehearing delivered October 28, 1996

*Beth B. Carson*, Revenue Legal Counsel, for appellant.

*Michael A. Skipper*, for appellee.

ROBERT H. DUDLEY, Justice. In January 1994, Debora Staton purchased a car and an extended service contract on the car and paid State sales tax on the sale of both the car and the service contract. The State sales tax attributable to the service contract was $49.28. On April 21, 1994, Ms. Staton filed a claim with the Department of Finance and Administration for refund of the $49.28 on the ground that, under the language of the sales-tax statute, the tax did not apply to the extended service contract. The Department denied the refund.

On July 7, 1994, Ms. Staton filed suit in chancery court and asked for judgment of $49.28. In addition, she sought class certification for all other taxpayers similarly situated. On May 8, 1995, the chancellor certified a class of taxpayers under Ark. R. Civ. P. 23 as "all of those who have, since July 7, 1991, purchased vehicle service contracts, sometimes referred to as extended warranties, covering motor vehicles within the State of Arkansas."

On November 21, 1995, the chancellor ruled that the service contracts were not taxable and that each class member could submit a claim to the chancery court for refund, dating back to 1991. The Department appeals to this court. Staton cross-appeals. We affirm the ruling that service contracts are not taxable and reverse the ruling certifying the class, causing the cross-appeal to be moot.

■ The Department argues that the chancellor erred in ruling that the service contracts were not taxable. It argues that Ark. Code Ann. § 26-52-301(3)(C)(i) and § 26-52-103(4) (Repl. 1992), together, provide the basis for taxation. The chancellor ruled correctly. Arkansas Code Annotated § 26-52-301(3)(C)(i), in material part, plainly levies a "tax...upon the gross proceeds or gross receipts derived from all sales to any person of...service of...and repair of motor vehicles." An extended warranty is not "service" of a motor vehicle. As the promised repairs are completely contingent upon events that may not transpire, the contracts cannot be said to be for service or repairs to automobiles. Consequently, we affirm this part

of the chancellor's order.

We turn now to the Department's point for reversal that the chancellor lacked subject-matter jurisdiction to certify the class. In its argument, the Department contends that the doctrine of sovereign immunity prohibits taxpayers' suits against the State except when permission to sue has been granted, and at other limited times not material to this suit. The Department contends that permission to seek a refund of erroneously assessed and collected sales tax is governed by Ark. Code Ann. § 26-18-507(e)(2)(A) (Repl. 1992), which allows a taxpayer to sue the sovereign for improperly collected sales tax only after a refund has been sought and the request is refused or when no response is made by the Department. The Department concludes that since Ms. Staton is the only taxpayer who had sought a refund and the only taxpayer whose request was denied, the chancery court did not have subject-matter jurisdiction over other members of the proposed class. The argument is well taken.

■ Article 5, section 20, of the Constitution of Arkansas cogently provides: "The State of Arkansas shall never be made defendant in any of her courts." This sovereign immunity may be waived only in limited circumstances. *Arkansas Dep't of Human Servs.* v. *State*, 312 Ark. 481, 850 S.W.2d 847 (1993); *Arkansas Game & Fish Comm'n* v. *Lindsey*, 299 Ark. 249, 771 S.W.2d 769 (1989). The doctrine of sovereign immunity is rigid. *Austin* v. *Arkansas State Highway Comm'n*, 320 Ark. 292, 895 S.W.2d 941 (1995).

■ Arkansas Code Annotated § 26-18-507(e)(2)(A) (Supp. 1992) grants legislative permission to a taxpayer to sue the State after a claim for refund has been filed and refused or the Commissioner has not acted upon it. *There must be full compliance with this type of statute before sovereign immunity is waived. Hercules, Inc.* v. *Pledger*, 319 Ark. 702, 706-07, 894 S.W.2d 576, 578 (1995). Because Ms. Staton's claim for refund was the only one filed and rejected, sovereign immunity was waived in only that one case.

■ A trial court acquires no jurisdiction where the suit is one against the State and there is no waiver of sovereign immunity. *McCain* v. *Crossett Lumber Co.*, 206 Ark. 51, 174 S.W.2d 114 (1943); *Pitcock* v. *State*, 91 Ark. 527, 121 S.W. 742 (1909). Thus, the State is correct in its contention that the trial court had no subject-matter jurisdiction over the entire class. Subject-matter jurisdiction based on sovereign immunity is an issue that is *always open*, and it is the duty of an appellate court to raise the issue of its own volition. *Crossett Lumber Co.*, 206 Ark. at 61-62, 174 S.W.2d at 120.

■     Interwoven with the doctrine of sovereign immunity in tax cases is sound fiscal public policy. Throughout the years, with one exception, we have written that a taxpayer must comply with the statutory requirements before sovereign immunity is waived. We have said that this procedure places the government on notice of the claim and informs it that it may be required to refund the money; consequently, it should make appropriate financial allowances. We fully discussed this policy in the recent case of *Mertz v. Pappas*, 320 Ark. 368, 896 S.W.2d 593 (1995), as follows:

> We have consistently followed the common law rule that prohibits the recovery of voluntary paid taxes, except where a recovery is authorized by a statute, without regard to whether the payment is voluntary or compulsory. *See, e.g., City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982); *Searcy County v. Stephenson*, 244 Ark. 54, 424 S.W.2d 369 (1968); *Thompson v. Continental Southern Lines, Inc.*, 222 Ark. 108, 257 S.W.2d 375 (1953). We follow this rule even when an illegal exaction claim is based on constitutional grounds. *Cash*, 277 Ark. at 504-05, 644 S.W.2d at 233. *When recovery is authorized by statute upon payment "under protest," we literally require a payment "under protest".* Hercules, Inc. v. Pledger, 319 Ark. 702, 894 S.W.2d 576 (1995). There is an exception for payment under coercion, *see Cash*, 277 Ark. at 505, 644 S.W.2d at 233; *Chapman & Dewey Land Co. v. Board of Directors*, 172 Ark. 414, 288 S.W. 910 (1926), but that exception is not applicable to the case at bar.
>
> The reasoning underlying our cases is sound. When taxes are paid to a government they are deposited into that government's general revenues and ordinarily are spent within that tax year. However, when the government is put on notice that it may be required to refund those taxes, it can make the appropriate allowance for a possible refund. *See Hercules, Inc.*, 319 Ark. at 707, 894 S.W.2d at 578. If we were to allow refunds for taxes voluntarily paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund.

*Id.* at 370, 896 S.W.2d at 594 (emphasis supplied).

In another case, one involving a claim for refund under the comparable income-tax statute, we wrote:

> In enacting § 28-18-406, the General Assembly had in mind at least two reasons for requiring a taxpayer to desig-

nate specifically any payment as being under protest when seeking judicial review of a final deficiency assessment. First, § 28-28-406(c) mandates that all taxes and penalties paid under protest are to be held by the director in an escrow account denominated the "Tax Protest Fund Account," and that refunds are to be made from this account. While we agree with Hercules that the phrase "paying under protest" is not defined by the Act, these terms are not ambiguous or difficult to understand. Protest is commonly understood to mean a formal disapproval or objection issued by a concerned party. Here, under § 28-18-406, it is clear that the protest is intended to place DF&A on notice that the taxpayer's payment must be deposited into the Protest Fund account. Second, a taxpayer who has protested and pursued an earlier administrative review of a proposed assessment under § 28-18-404 may reasonably decide not to pursue further adjustments of the assessment or judicial review of the final determination. While a payment which is not made under protest is deposited into general revenues and becomes available for immediate use by the state, a payment made under protest only becomes available for the state's use after the taxpayer fails to file suit within the one year period or after judicial determination that the deficiency assessment was valid. *See* § 28-18-406(c)(3).

*Hercules, Inc. v. Pledger,* 319 Ark. 702, 707, 894 S.W.2d 576, 578 (1995).

Another case in which we recognized fiscal policy concerns was *City of Little Rock v. Cash,* 277 Ark. 494, 644 S.W.2d 229 (1982). In that case, which involved a tax that was illegal from its inception, we pointed out that, even though the tax had always been illegal, it had been collected and spent by the City; therefore, the class action could be maintained only from the date the suit was filed and the City was put on notice that it should make allowance before spending the money.

The anomalous case is *Pledger v. Bosnick,* 306 Ark. 45, 811 S.W.2d 286 (1991). In that case it was necessary for each member of the purported class of taxpayers seeking a refund of income taxes to file for a refund as a prerequisite for membership in the class. At issue there, as here, was Ark. Code Ann. § 26-18-507, the statute by which the State can waive sovereign immunity. We held that the statute did not require each member of the class to file a request for a refund. This court agreed with the argument that

requiring strict compliance with the statute would "ignore one of the bases for class action suits, i.e., to deal with these types of issues in a single action rather than requiring all members of a class to bring suit." *Id.* at 56, 811 S.W.2d at 293. However, neither the majority opinion nor the dissenting opinion mentions sovereign immunity, and the case contains no holding on the issue of sovereign immunity. We did not recognize that sovereign immunity was an issue that should have been argued, and we failed to raise it on our own motion. By not doing so, we allowed Ark. R. Civ. P. 23, the class action rule, to prevail over the constitutional provision granting sovereign immunity. But we now recognize that the issue is before us, and we reverse this part of *Pledger v. Bosnick*.

■ In the case now before us, Ms. Staton was the only taxpayer who complied with the statute that caused the State to waive sovereign immunity. It was error to certify a class composed of other taxpayers when they had not complied with that statute, and for that reason we reverse the certification of the class.

■ On cross-appeal Staton contends that the chancellor erred in refusing to grant an injunction against the collection of the tax and in refusing to order an accounting. Since we hold that it was error to certify the class, these two issues are moot.

This opinion is substituted for the opinion handed down on July 15, 1996. *See State v. Staton*, 325 Ark. 341, 925 S.W.2d 418 (1996).

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.

NEWBERN, CORBIN, and BROWN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The petition for rehearing filed by the Department of Finance and Administration (DFA) in this case does little more than reargue the points as they were argued in DFA's original brief. Those points were fully aired in the original majority and dissenting opinions. (The original majority opinion appears as an appendix to this dissenting opinion.) The petition for rehearing, therefore, is distinctly violative of Rules of the Supreme Court and Court of Appeals of the State of Arkansas 2-3(f), and it should be denied summarily. Not only does the majority ignore our established rule on that point, it overrules recent precedent and rides roughshod over taxpayers whose money may have been illegally collected by the State. All of that is done in the name of sovereign immunity, which has been waived by the General Assembly.

The majority opinion rehashes the arguments which led to our original decision in this case. It states as a main point that the majority and dissenting opinions in *Pledger* v. *Bosnick,* 306 Ark. 45, 811 S.W.2d 286 (1991), a case upon which the original majority opinion relied, did not mention sovereign immunity. The suggestion seems to be that, because the decision did not mention sovereign immunity, it does not apply to this case. That is incorrect.

A main issue in the *Pledger* case was whether it was necessary for each member of the purported class of taxpayers seeking a refund of state income taxes to have filed for a refund as a prerequisite for membership in the class. At issue there, as here, was Ark. Code Ann. § 26-18-507, the statute by which the General Assembly waived sovereign immunity. While the opinion did not mention sovereign immunity, it held that the statute did not require a refund request by each member of the class. This Court agreed with the argument that requiring strict compliance with the statute would "ignore one of the bases for class action suits, *i.e.,* to deal with these types of issues in a single action rather than requiring all members of a class to bring suit."

The opinion granting rehearing concludes that government might have to "shut down some essential services" if the taxpayers are allowed to proceed as a class in a case such as this one. The argument is not convincing. The opinion focuses on the need of government to have notice of its possible liability. It does not, however, suggest why, as in a case such as this one, the notice given by one taxpayer should not be sufficient to inform the government that it may owe all who are similarly situated.

The sky is indeed not falling in this case or in others for which the *Pledger* decision should be precedent. Ed Hicks, the Excise Tax Administrator, testified that the General Assembly appropriates $50,000,000 biennially for the miscellaneous tax account for the purpose of making refunds. In response to a question by the Chancellor, Mr. Hicks stated there was plenty of money in that account to satisfy the claims at issue in this case. Contrary to the conclusion of the majority, government obviously has the ability to plan for and accommodate claims such as the one under consideration.

The Chancellor's order, approved by the original majority opinion in this case, would have required notice to the taxpayers of the facts giving rise to claims, *i.e.,* the allegation that the tax had been illegally collected. It would have then required each taxpayer seeking membership in the class to present proof of payment of the tax at issue and make a claim to a master for refund.

The effect of the majority opinion granting rehearing is to suggest that DFA may sit by smugly and entertain the claims of the one or two taxpayers who may have information about the possible illegality of the tax in question, knowing all the while that there are thousands of others who may be owed but with whom it will never have to reckon.

Once again, it must be pointed out that it is the announced policy of DFA to treat all taxpayers alike. Assuming that is the policy to be applied, it should make no theoretical difference to DFA or the State's coffers whether the action proceeds as a class action or as a single claim by Ms. Staton if she prevails. It will, however, make a great practical difference to the others to whom the money may be owed. If the class action were allowed to proceed, taxpayers would be afforded notice pursuant to Ark. R. Civ. P. 23(c) which requires "the best notice practicable under the circumstances." Denial of the class action will undoubtedly result in many persons who may be owed refunds remaining ignorant of the fact. As the majority of the members of this Court stated in the original opinion in this case, avoidance of payment of money owed is not a good reason for refusal of a class action.

I respectfully dissent.

CORBIN and BROWN, JJ., join.

### APPENDIX TO DISSENTING OPINION ▮

This is a class-action tax-refund case. The appellee, Debora Staton, sued the Department of Finance and Administration (DFA) on behalf of herself and other taxpayers for refunds of sales taxes paid on purchases of extended warranty agreements. The Chancellor certified the class action in accordance with Ark. R. Civ. P. 23(a). Although requests for an accounting and an injunction prohibiting the collection of the tax were denied, the Chancellor held in favor of the class on the merits and ordered refunds to taxpayers who seek them.

### 1. Appeal

Several issues are presented. DFA attacks the jurisdiction of the Chancellor to hear the suit as a class action because of failure to name a class of persons who have followed the statutory procedure to obtain a tax refund. The class counters with a claim that the class certification has not been appealed in a timely manner. On the merits, DFA contends the tax law, as interpreted for many years by DFA, permits collection of the tax. On cross-appeal, the class contends the Chancellor erred in refusing to enjoin the DFA from

continuing to collect the tax and in refusing to require an accounting to class members who had paid the tax rather than to those who come forward with claims. We hold the Chancellor did not err on any of the points asserted.

### a. Timeliness of appeal

The order certifying the class was entered May 8, 1995, and the notice of appeal from the final judgment was not filed until December 13, 1995. Although interlocutory, an order granting a motion to certify a case as a class action "in accordance with Rule 23 of the Arkansas Rules of Civil Procedure" is appealable. Ark. R. App. P. 2.(a)9. DFA does not question the class's compliance with the basic requirements of Rule 23. It contends, rather, that sovereign immunity, Ark. Const. art. 5, § 20, precluded the Chancellor from having subject matter jurisdiction of the claim made by the class because its purported members have not complied with the provisions of the statute granting permission to sue the State and thus waiving sovereign immunity.

As the issue on appeal goes beyond the technical aspects of class certification, we do not regard it as untimely. Even if DFA had appealed within 30 days of the class certification, it is doubtful that we would have entertained its sovereign immunity claim upon interlocutory appeal. *Arkansas State Bd. of Educ. v. Magnolia Sch. Dist. No. 14,* 298 Ark. 603, 769 S.W.2d 419 (1989).

### b. Subject-matter jurisdiction

Upon the purchase of a vehicle, Ms. Staton, the class representative, paid a sales tax of $49.28 on the price she paid for an extended warranty. She filed a claim for a refund from DFA which denied the claim. Ms. Staton then filed an action in Chancery Court on behalf of herself and on behalf of other similarly situated taxpayers. The amended complaint alleged that DFA was unlawfully imposing a tax on the prices paid by members of the plaintiff class for extended warranty coverage on automobiles. It asserted that the Arkansas Gross Receipts Act did not authorize the imposition of such a tax and sought a refund of the taxes paid on the sale of extended warranties. The complaint also prayed for an injunction to stop DFA from collecting the tax and for an accounting to determine which taxpayers had paid the tax. It would thus have put the onus of determining who had paid the tax, and thus of determining who was potentially entitled to a refund, upon DFA.

DFA moved to dismiss on the ground that it failed to state facts upon which relief could be granted and on the ground that Ms.

Staton lacked standing. After Ms. Staton filed a second amended complaint, DFA again moved to dismiss. DFA claimed, as another reason for dismissal, that "the doctrine of sovereign immunity bars a class action tax refund lawsuit where not all of the proposed class members have satisfied the administrative requirements necessary to confer subject matter jurisdiction on this court."

The order certifying the class recognized as members of the class "all of those parties who have, since July 7, 1991, purchased vehicle service contracts, sometimes referred to as extended warranties, covering motor vehicles within the state of Arkansas."

The essence of DFA's sovereign immunity argument is that sovereign immunity prohibits suits against the State except when permission to sue has been granted. The statute granting permission to taxpayers such as Ms. Staton is Ark. Code Ann. § 26-18-507(e)(2)(A) (Repl. 1992) which allows a taxpayer to seek judicial relief from an improperly collected tax after a refund has been sought and there has been no timely response from "the director" or the request has been refused. As the complaint in this case seeks relief for a class of persons without specifying that they must have followed the statutory refund procedure, DFA contends the concept of sovereign immunity precluded subject-matter jurisdiction in the Chancery Court.

We recently rejected the same argument in *Pledger* v. *Bosnick,* 306 Ark. 45, 811 S.W.2d 286 (1991). In that case, certain taxpayers claimed that the State had taxed their pension incomes in a discriminatory manner. The challenged law allowed a full exemption for certain retirees from state government positions while exempting only a small portion of the pensions of others. On appeal it was urged that the Chancellor erred in allowing refunds to members of the class who had not filed amended income-tax returns for 1985. It was argued by the State, as in this case, that class members had not complied with § 26-18-507.

The Chancellor's order permitting recovery by the class was affirmed. The opinion stated, "Although this court has not ruled on this precise issue as applicable to tax refunds, there is ample authority for the appellees' position and we adopt that reasoning. *See Santa Barbara Optical Co.* v. *State Bd. of Equalization,* 47 Cal. App. 3d 244, 120 Cal. Rptr. 609 (1975); *Ware* v. *Idaho State Tax Commission,* 98 Idaho 477, 567 P.2d 423 (1977); *Clark* v. *Lee,* 273 Ind. 572, 406 N.E.2d 646 (1980); *Thorn* v. *Jefferson County,* 375 So.2d 780 (Ala. 1979); and *Fiorito* v. *Jones,* 39 Ill.2d 531, 236 N.E.2d 698 (1968)." We now review the "reasoning" we adopted from those cases.

The opinion in *Fiorito* v. *Jones, supra,* concerned amendments to an Illinois tax statute which gave exemptions to certain service providers while taxing all others. Some of the class members were the service providers who were to pay the tax to the State, and some were persons who had been charged the tax by the providers. It was held that the differences between the class members were not sufficient to void the class because each group presented common legal and factual issues, and each would have an interest in the common fund to be created by a holding that the tax was improperly collected.

In *Ware* v. *Idaho State Tax Commission, supra,* a group of taxpayers had failed to claim refunds of sales taxes due to persons over 65. The tax authority had failed to make available means to request the refunds and had even misrepresented the law on the procedure to be used. Although those facts are quite different from the ones now before us, some of the reasoning of the Supreme Court of Idaho is useful.

> The record before us shows that the Commission ... refused any refund claims such as those which were found valid by the trial court. It admits that it had no intention of allowing any such claims. In these circumstances, we find that the requirement of the filing of a claim for the refund was the requirement of a useless and futile act. "The law does not require useless acts from litigants as prerequisites to seeking relief from the courts." [Citations omitted.]

In *Clark* v. *Lee, supra,* plaintiffs claimed an Indiana "occupations income tax" discriminated against non-resident taxpayers by giving a credit to residents against other taxes. A question on appeal of a judgment in favor of the plaintiffs was whether the class was proper in the absence of a showing that all of the class members had exhausted their administrative remedies.

In holding the class was proper, the following reasoning was expressed by the Supreme Court of Indiana:

> In the situation with which we are confronted, the named plaintiffs personally satisfied the jurisdictional requirements of the statute by exhausting their administrative remedies before bringing their action. In so doing they afforded the state government the opportunity of reckoning with their claim. The claim itself was constitutional in nature and sought to void the statute because it discriminated against a class to which plaintiffs belonged, namely non-residents. It was by its nature a claim which would, if successfully prose-

cuted by a lone plaintiff, provide a basis for class-wide relief in the absence of certification. We, therefore, conclude that the certification of this action as a class action does not vitiate or evade the jurisdictional requirements of the statute and is not contrary to the case law cited.

The Alabama case, *Thorn* v. *Jefferson County, supra,* cited in *Pledger* v. *Bosnick, supra,* is not as helpful as the others. In that case, the Alabama Supreme Court merely held that there was no requirement that class members have sought a refund when the claim was that the property-tax statute in question was unconstitutional and thus void.

In *Santa Barbara Optical Co.* v. *State Bd. of Equalization, supra,* a group of dispensing optical corporations sued California for refund of improperly imposed sales taxes. The State demurred on several bases including a contention that not all of the corporations had made timely claims with the State, each stating its name and the amount of refund due. The demurrer was sustained. The California Court of Appeals reversed, holding the claims statute was satisfied if the representative members of the class gave "sufficient information to identify and make ascertainable the class itself." The Court also declined the State's argument that some unnamed members of the class could not be "claimants" under the applicable refund statute because their claims had never been disallowed in writing, so their claims were not timely. The underlying reason recited for the decision sounded familiar.

> If a class suit were not permitted a multiplicity of actions will be necessary in order to effectuate recovery by the individual purchasers. Since in many instances, the small amount involved may discourage an individual action as economically impractical, the state would be unjustly enriched, if a class suit were not permitted.

In *Woosley* v. *State of California,* 3 Cal.4th 758, 13 Cal. Rptr.2d 30, 838 P.2d 758 (1992), the California Supreme Court overruled the Court of Appeals decision in the *Santa Monica Optical Co.* case on the basis that the California Constitution specifically provides: "After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." The Court was also influenced by the fact that the California legislature had, subsequent to Woosley's submission of his claim, enacted a law that required that any class action for refund of vehicle license fees be authorized by each member of the class who must sign the claim. The reasoning of the

Court was that the State must know the claims against it and thus be able to plan its budget accordingly.

To be sure, there are other cases in other jurisdictions which use reasoning contrary to that we adopted from the cases we cited in *Pledger* v. *Bosnick, supra.* All of the cases we cited are found in Annot., "Propriety of Class Action in State Courts to Recover Taxes," 10 ALR 4th 655 (1981). *See also* Annot., "Maintenance of Class Action Against Governmental Entity as Affected by Requirement of Notice of Claim," 76 ALR 3d 1244 (1971).

Again, we have decided this issue based on the reasons given in the cases we cited in *Pledger* v. *Bosnick, supra.* We note in this case that filings for refunds by all the class members would apparently have been useless acts. We note also testimony presented by DFA that, once a decision had been reached by a court in a suit by a single taxpayer that the tax had been illegally collected, all taxpayers would be treated the same. We fail to see how presentation of requests for refund by way of a class action could be prejudicial to DFA or the budgeting process in view of DFA's apparent willingness to give a refund to any taxpayer who seeks it after such a decision. It may be that more taxpayers who have paid the tax will become claimants due to the notices to be provided through the Court than would have sought refunds absent such a procedure, but discouraging payment of money owed is hardly a good reason to deny a class action.

We hold the Chancellor did not lack jurisdiction of the subject matter of the claim, as the class certification was proper.

*c. The merits of the claim*

Arkansas Code Ann. § 26-52-301 (Supp. 1995) provides in part:

> There is levied an excise tax of three percent (3%) upon the gross proceeds or gross receipts derived from all sales to any person of the following:
>
> * * *
>
> (C)(i) *Service of* alteration, addition, cleaning, refinishing, replacement, *and repair of motor vehicles,* aircraft, farm machinery and implements, motors of all kinds, tires and batteries, boats, electrical appliances and devices, furniture, rugs, upholstery, household appliances, television and radio, jewelry, watches and clocks, engineering instruments, medical and surgical instruments, machinery of all kinds, bicycles, office machines and equipment, shoes, tin and sheet metal,

mechanical tools, and shop equipment. [Emphasis added.]

DFA contends that the sales of extended warranties are taxable because it has ruled them taxable, and has taxed them for at least 17 years, and because the Court impliedly held that they are taxable in *Ragland v. Miller Trane Service Agency*, 274 Ark. 227, 623 S.W.2d 520 (1981).

In the *Ragland* case the taxpayer was engaged in the business of inspecting, servicing, and repairing commercial heating and cooling devices. The taxpayer sold two types of contracts. The first was an "inspection only" contract which all parties agreed was exempt from the gross-receipts tax. The second was a "Full Coverage Commercial Service Contract" whereby the service agency agreed with a customer to inspect (a minimum of 3 times a year), maintain, and repair commercial heating and cooling units. The contract provided for an annual or monthly prepayment. The full maintenance agreement was designed to assure the maximum service for the efficient and economical operation of the equipment. Contract jobs under the service agreement took priority over other jobs and were guaranteed prompt action upon request.

The State, through the Revenue Department Hearing Board, determined that the service agency owed a sales-tax deficiency of $8,253.71, which included interest and a 10% penalty, for failure to remit the 3% gross-receipts tax on the sale of the commercial contracts from September 1, 1975, through August 31, 1978. The assessment was paid under protest and then made the subject of a chancery court claim. The Chancellor found that 75% of the taxes assessed were improper, including the interest and penalty. The State was ordered to repay those funds.

On appeal, it was stipulated that the issue presented was whether the total consideration paid pursuant to the contract was subject to the 3% sales tax, or only that portion which relates to specific repairs. The State contended the Chancellor erred in finding the service agency's full-coverage commercial contract could be broken down into component parts for the purposes of collecting the gross-receipts tax.

The Court noted that the sales-tax statute in effect provided for a 3% tax on gross proceeds or receipts derived from the service of "alteration, addition, cleaning, refurbishing, replacement and repair of . . . machinery of all kinds . . . ." The Court also noted that the term "gross proceeds" or "gross receipts" was defined as "the total amount of consideration for the sale of tangible personal property and such services as are herein specifically provided for . . . ."

Based on the statute, the Court, in concluding that the entire value of the contract was subject to the sales tax, stated:

> Here, the total consideration paid by appellee's customers is for the package of services, i.e., inspection, maintenance and repairs, which it agreed to perform during the period covered by the contract. Maintenance and repairs of the machinery are taxable services. Inspection of the equipment is a prerequisite to the routine maintenance and repair and is an integral part of the contract. This inspection involves labor performed pursuant to the sale of taxable services; therefore, the cost of such an inspection cannot be deducted from the total amount of consideration paid for the full service contract. Appellee's insurance coverage for reimbursement to it for repairs it made, plus 3% sales tax, was for its benefit. In summary, appellant's claim is properly based upon the total consideration received by appellee for the sale of its package contract.

DFA argues that, because the contract receipts for future services were held to be taxable, the implication is that receipts for services to be performed upon contingency are taxable. We see a considerable difference between a prepayment for services to be rendered and a payment for something like insurance against the need for services which may or may not arise. DFA's interpretation is obviously strained.

In response to the dissenting opinion, we must also note that which DFA does not argue. *City of Little Rock* v. *Cash*, 277 Ark. 494, 644 S.W.2d 229 (1983), is cited in DFA's brief solely in support of this statement: "This court hears equity cases *de novo* on the record and enters such judgment as the chancellor should have entered on the undisputed facts." DFA makes no argument whatever to the effect that, because the tax was "voluntarily" paid by the class members, they may not succeed in their quest for refunds.

We decline to address the issue in any depth, but point out summarily that there is good reason for not making such an argument. The general statement we adopted in *Thompson* v. *Continental Southern Lines, Inc.*, 222 Ark. 108, 257 S.W.2d 375 (1953), from Cooley, *The Law of Taxation*, Ch. 20, § 1282, and cited in *City of Little Rock* v. *Cash, supra,* was based on Professor Cooley's recitation that "every man must know the law." It included the following: "It is well settled that if the payment of a tax is a voluntary payment, it cannot be recovered back, except where a recovery is authorized by

the provisions of a governing statute regardless of whether the payment is voluntary or compulsory." Section 26-18-507(a) authorizes such an action when a tax is paid under "mistake of law." *See Taber v. Pledger*, 302 Ark. 484, 791 S.W.2d 363 (1990), cert. denied, 498 U.S. 967 (1990). The statute makes no reference to whether the tax was paid voluntarily or as the result of compulsion.

The reason we decline further to address this issue raised in the dissenting opinion is that it was not raised in the Trial Court or here. Our reason was stated by the majority of the members of this Court in *Smart v. State*, 297 Ark. 324, 761 S.W.2d 915 (1988), in response to a dissenting opinion raising an issue not argued by the appellant at trial or on appeal:

> The dissenting opinion asserts that the majority "evades the question...." There are clear and cogent reasons. The argument was not raised in the trial court, nor was it argued on appeal. Either omission, according to literally hundreds of our cases, many of which are authored by the dissenting justice, obviates our dealing with issues that are not presented. If we undertook to answer arguments that were raised neither here nor in the trial court, the process of appellate review should doubtless collapse under its own weight. Few principles of appeal and error are more widely followed or firmly entrenched than the rule that we do not address arguments not raised by the litigants.

*See also Smith v. State*, 310 Ark. 31, 832 S.W.2d 497 (1992); *Williams v. State*, 304 Ark. 279, 801 S.W.2d 296 (1990).

DFA does argue its interpretation of the statute in question here is entitled to deference, and we agree. *See Arkansas Public Service Comm'n v. Allied Telephone Company*, 274 Ark. 478, 625 S.W.2d 515 (1981). The basic rule of statutory construction, however, is to give effect to the intent of the General Assembly, and when a statute is clear, it is given its plain meaning. *Hercules, Inc. v. Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995).

The statute plainly levies a "tax . . . upon the gross proceeds or gross receipts derived from all sales to any person of . . . service of . . . and repair of motor vehicles." An extended warranty is not "service." As the promised repairs are completely contingent upon events which may not transpire, the contracts cannot be said to be for service or repairs to automobiles.

The judgment is affirmed on appeal.

### 2. Cross-appeal

#### a. Injunction

The Chancellor was asked to enjoin DFA from collecting the

tax. The class contends:

> Plaintiff was given judgment for $10,050,759.17 plus additional taxes and interest accruing at the rate of $6,352.00 per day. Since defendant was not enjoined from collecting the illegal tax on extended warranties, taxpayers have, and will, continue to pay State sales tax on extended warranties. It is possible that the total amount of refunds will exceed the damages awarded.

The only authority cited on this point is *Harkey* v. *Matthews,* 243 Ark. 775, 422 S.W.2d 410 (1967), for the proposition that public officials may be enjoined from *ultra vires* acts.

It is not at all clear that the Chancellor awarded the amount stated as a "judgment" in favor of the class. As we read the order, he found as a matter of fact that the figure stated was the amount which might have to be refunded.

The Chancellor was presented with evidence that DFA maintained a miscellaneous tax account through which it would pay the refund if ordered. According to testimony presented by DFA, $50 million per year was appropriated for the account for the years 1995, 1996, and 1997, and the State could have at least $30 million available for each fiscal year. The refunds, if required, would come out of that account. Testimony was also presented that an injunction, if granted, could disrupt public education and the services performed by the Department of Human Services.

The Chancellor denied the request for an injunction, finding that DFA had "established that sufficient funds are appropriated from which refunds may be made if ultimately ordered by the Court." An order granting or denying an injunction is within a chancellor's discretion. *Smith* v. *American Trucking Ass'n,* 300 Ark. 594, 781 S.W.2d 3 (1989). The Chancellor did not abuse his discretion.

### b. Accounting

Again without citation to authority, it is contended that the Chancellor should have ordered DFA to identify each member of the group and refund the amount of the tax paid to that member.

Evidence was presented that such a requirement would be extremely burdensome and expensive. The Chancellor ruled that "the better method of refund is to require each taxpayer to present proof of their payment of taxes on an extended warranty during the time period in question in this lawsuit. A master is to be appointed to review and approve each claim filed for refund."

We consider the solution reached by the Chancellor to be consistent with our decision in *International Union of Electrical, Ra-*

*dio, and Machine Workers* v. *Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988), in which we emphasized the need for discretion in the management of a class action and the desirability of choosing a management solution fair to all parties.

Affirmed on cross-appeal.

DUDLEY, J., not participating.

JESSON, C.J., and GLAZE, J., dissent.

## END APPENDIX TO DISSENTING OPINION

ROBERT L. BROWN, Justice, dissenting. The legacy of this opinion is to deny Arkansas taxpayers who have paid $20, $30, $50, or $100 in illegally assessed taxes a remedy for recouping those taxes. This is unjust and unfair in the extreme. Until today a remedy was recognized. *See Pledger* v. *Bosnick*, 306 Ark. 45, 811 S.W.2d 286 (1991). Now the majority of this court closes that door and effectively locks these people out of court and divests them of any practical legal recourse. I would deny rehearing and affirm our decision in *State* v. *Staton*, 325 Ark. 341, 925 S.W.2d 418 (1996) (*Staton I*).

The majority decides as it does for two primary reasons: (1) an immutable and unshakable conviction that sovereign immunity allows the Department of Finance and Administration (DFA) to collect illegal taxes under these circumstances with impunity; and (2) an amorphous notion that allowing individuals who are part of a class to file claims for refund for illegal taxes will bankrupt the State. I disagree on both counts.

First, on sovereign immunity. We do have a provision in our Constitution that says the State may not be a defendant in her courts. Ark. Const. art. 5, § 20. But the General Assembly has enacted a statute permitting claims for refunds for taxes erroneously and mistakenly paid and for suits thereafter if the claims are not paid. Ark. Code Ann. § 26-18-507 (Repl. 1992). Thus, sovereign immunity has been waived by the General Assembly for erroneously paid taxes. The fact that these taxes were voluntarily paid is of no moment in light of the statute that provides a refund remedy after voluntary payment.

The question then is whether § 26-18-507 has been complied with by virtue of the class-action remedy under Arkansas Rule of Civil Procedure 23. I conclude that it has been. Under comparable circumstances, we held there was compliance in *Pledger* v. *Bosnick, supra*. Using the precedent of *Bosnick*, we decided in *Staton I* that a class action was a valid means of claiming refunds under § 26-18-507 for wrongfully collected taxes. We further affirmed the chancellor who required each taxpayer to present proof of payment of

the erroneous tax as a prerequisite to a refund. That is what the statute requires. Hence, the remedy afforded in this case met the statutory requirements.

The majority no doubt believes that permitting a class-action suit before class members have claimed refunds puts the cart before the horse. *See* Ark. Code Ann. § 26-18-507(c) (Repl. 1992). Not so. The class representative, Debora Staton, filed this lawsuit on behalf of the class. Notice presumably has gone out or will go out to class members who now must prove their claims. The net effect of this, as was emphasized in *Staton I,* is that notices will be sent to class members under court auspices as provided by Rule 23. Better notification to wronged class members will enhance their ability to claim refunds and is without question a worthy goal.

The majority writes, somewhat myopically, that individuals who have paid a $30 or $40 sales tax on an extended warranty should have claimed a refund under § 26-18-507 prior to the class-action relief. But how does that person know the tax is illegal? That person does not know. In addition, prior to the class action lawsuit, had a class member claimed a refund, that person would have been rebuffed by DFA because DFA's position was that the tax was valid. A claim for refund would have been a totally useless act. It was only after the class action lawsuit and the decision by the chancellor that a claim had viability. Indeed, a class action is the only practical way to remedy this illegal tax, since only the most civic-minded citizen would undertake the arduous burden of obtaining judicial relief when the recovery could only be nominal at best.

The majority plainly fears a catastrophic loss to the State coffers resulting from class-action claims. I do not see that. In this case, each class member must prove his or her claim, which is what we held in *Staton I.* And consider the alternative. The majority is holding that DFA can wrongfully collect taxes, then build a wall around itself and assert that a taxpayer has no practical recourse, even when the taxpayer can prove the claim. The rationale by DFA is it has already relied on those wrongfully collected taxes for spending purposes. Something is severely out of kilter here. If a tax is wrongfully assessed and collected against a person and the taxpayer can prove it, that person deserves to be repaid. That is the remedy § 26-18-507 provides.

Again, the anomaly here is that under the decision today these people who have been wrongfully taxed have no remedy as a practical matter. In *Pledger* v. *Bosnick,* 306 Ark. 45, 811 S.W.2d 286

(1991), this court recognized that fact and permitted precisely what the class attempts to do in this case. Moreover, that was a 1991 decision and the General Assembly since that decision has taken no action to disabuse Arkansas taxpayers that that is a correct interpretation of the law. Finally, I strongly disagree with the majority's conclusion that sovereign immunity was not contemplated by *Pledger* v. *Bosnick, supra.* That is splitting fine hairs. In *Bosnick,* we analyzed § 26-18-507, *which waives sovereign immunity,* and determined that compliance had occurred.

In short, the taxpayers of this State are put in a Catch-22 situation when the majority holds that they must first seek a refund apart from the class for a tax (1) they did not know was wrongful, and (2) DFA would not have refunded in any event because DFA believed it to be a valid tax. I would not give DFA *carte blanche* to tax illegally and then deny refunds after class action notice and proof by the taxpayers.

I respectfully dissent.

NEWBERN and CORBIN, JJ., join.