Don CROSS *v.* ARKANSAS LIVESTOCK and POULTRY
COMMISSION; and Jack Gibson, Individually and as Head of
the Arkansas Livestock and Poultry Commission

96-304                                        943 S.W.2d 230

Supreme Court of Arkansas
Opinion delivered April 28, 1997
[Petition for rehearing denied June 2, 1997.]

*Diana M. Maulding,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Arnold M. Jochums,* Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Don Cross appeals the order of the Pulaski County Circuit Court granting summary judgment to Appellees Arkansas Livestock and Poultry Commission and Jack Gibson, Executive Director of the Commission, and dismissing Appellant's due process claim arising out of his discharge from the Commission and his claim for tortious interference against Gibson. We affirm.

### Facts and Procedural History

Appellant was discharged from the Commission by Appellee Gibson on May 24, 1994, after having worked for the state agency for approximately nine years. Appellant filed a complaint against the Commission and Gibson, individually and as Executive Director of the Commission, in the circuit court on November 8, 1994. The complaint alleged that Appellant had a property interest in his continued employment with the Commission and was entitled to notice and a hearing prior to his termination, pursuant to the

Fourteenth Amendment to the United States Constitution, and that, additionally, Gibson had tortiously interfered with his contractual rights to continued employment with the Commission. Appellant sought relief from Appellees in the form of reinstatement of his employment, back pay, restitution of pension benefits, and damages for emotional distress. Appellant also sought punitive damages for his claim against Gibson.

██ Appellees moved to dismiss the complaint for lack of jurisdiction based on the doctrine of sovereign immunity, but the trial court denied the motion. Appellees then filed a motion for summary judgment and, after hearing argument from both sides, the trial court granted the motion and dismissed both claims with prejudice. Appellant appeals the decision of the trial court on both claims. Additionally, in the trial court, Appellant sought partial summary judgment against Appellees on the due process claim, but there is no indication in the abstract that the trial court ever ruled on Appellant's motion. As it is the movant's burden to obtain a ruling on his motion, we will not address this point of appeal. *Southern Farm Bureau Cas. Ins. Co. v. Allen*, 326 Ark. 1023, 934 S.W.2d 527 (1996).

### Claim Against the State Commission

Before we address the merits of Appellant's points of appeal, we must first address Appellees' argument that the trial court lacked jurisdiction pursuant to Article 5, Section 20, of the Arkansas Constitution of 1874 to hear Appellant's claim against the state agency.

██ Article 5, section 20, of the Arkansas Constitution provides that, "[t]he State of Arkansas shall never be made defendant in any of her courts." This court has consistently interpreted this constitutional provision as a grant of sovereign immunity and a general prohibition against awards of money damages in lawsuits against the State of Arkansas and its institutions. *See, e.g., Smith v. Denton*, 320 Ark. 253, 895 S.W.2d 550 (1995); *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771, *cert. denied*, 498 U.S. 824 (1990). The doctrine of sovereign immunity is rigid and, as such, the immunity may be waived only

in limited circumstances. *State v. Staton*, 325 Ark. 341, 942 S.W.2d 804 (1996). Sovereign immunity is jurisdictional immunity from suit. *Department of Human Servs. v. Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). Simply put, where the suit is one against the State and there has been no waiver of immunity, the trial court acquires no jurisdiction. *Staton*, 325 Ark. 341, 942 S.W.2d 804.

■ In *Fireman's Ins. Co.*, 301 Ark. 451, 784 S.W.2d 771, this court discussed the nature of the State's immunity from suit and this court's historical interpretation of it:

> The completeness of the intent of such immunity is best illustrated by the long and unequivocal line of cases expressly recognizing and protecting the immunity. As early as *Pitcock v. State*, 91 Ark. 527, 121 S.W. 742 (1913), this court held that the constitutional prohibition was not merely declaratory that the state could not be sued without her consent, but that all suits against the state were expressly forbidden. Further, where the pleadings show that the action is, in effect, one against the state, the trial court acquires no jurisdiction.

> Extending this immunity to its next logical step, we held that where a suit is brought against an agency of the state with relation to some matter in which the defendant represents the state in action and liability, and the state, though not a party of record, is the real party in interest so that judgment for plaintiff would operate to control the action of the state *or to subject the state to liability*, the action is, in effect, one against the state and prohibited by the constitutional bar. *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938). *See also, Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986).

*Id.* at 455, 784 S.W.2d at 773-74. This court has recognized exceptions to the doctrine of sovereign immunity where an act of the legislature has created a specific waiver of immunity, *State v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996), and where the State is the moving party seeking specific relief. *Fireman's Ins. Co.*, 301 Ark. 451, 784 S.W.2d 771; *Parker v. Moore*, 222 Ark. 811, 262 S.W.2d 891 (1953). Obviously, where the State is the moving party, it is prohibited from raising sovereign immunity as a defense

to any counterclaim or offset. *Parker*, 222 Ark. 811, 262 S.W.2d 891.

Appellant has chosen not to respond directly to Appellees' argument concerning lack of jurisdiction, but he maintains that jurisdiction is implied from Ark. Code Ann. § 19-4-1614(a) (Repl. 1994), which provides in pertinent part:

> In the event an employee of the State of Arkansas, or the authorized agent of the employee, files suit against the State of Arkansas *in a court of competent jurisdiction* for relief under the provisions of Title VII of the Federal Civil Rights Act of 1964, as amended, or the Federal Civil Rights Act of 1866, or the Federal Civil Rights Act of 1871, or the Fourteenth Amendment to the United States Constitution, and the court finds for the employee and in so finding awards wages or salaries for personal services rendered in addition to wages or salaries already paid or due, the additional wages or salaries shall be paid from the regular salary appropriation from which the employee is normally paid. [Emphasis added.]

Appellant construes this section to provide that the State of Arkansas may be sued in her own courts provided the basis of the suit is one grounded in the federal acts and constitutional provisions outlined in that section. Appellant insists that this provision amounts to an implied waiver of the State's immunity by the legislature.

We construe that section, codified within the State Accounting and Budgetary Procedures, to provide nothing more than a means for the payment of such judgments against the State. We do not interpret that section as creating a waiver of the State's immunity from suit in her own courts. Nor are we persuaded by Appellant's argument that if section 19-4-1614(a) does not provide for an employee's suit against the State in the courts of this State, then the provision becomes meaningless. Appellant may pursue such claims in federal court. We thus conclude the trial court lacked jurisdiction to hear this claim pursuant to the doctrine of sovereign immunity; hence, we affirm the ultimate dismissal of the claim with prejudice.

### Claim against Jack Gibson

■ Concerning the claim against Appellee Jack Gibson, we must likewise initially determine whether the trial court lacked jurisdiction to hear Appellant's complaint. Ark. Code Ann. § 19-10-305(a) (Repl. 1994) provides:

> Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

Thus, with the exception of those persons covered by liability insurance, if any officers and employees of the State of Arkansas act without malice and within the scope of their employment, they are immune from an award of damages in litigation. *Smith*, 320 Ark. 253, 895 S.W.2d 550. We conclude that on the face of the complaint, in which Appellant alleged that Gibson intentionally deprived him of employment "without just cause and for personal motives and thus interfered with [his] employment" with the Commission, the trial court had jurisdiction to hear the claim against Gibson, both in his individual capacity and as Executive Director of the Commission.

In its order, the trial court found that because Appellant could not establish the existence of a contract for his employment with the Commission, it necessarily followed that he could not establish the required element that Gibson's termination of his employment tortiously interfered with Appellant's contractual relations with the Commission. Appellant argues on appeal that the trial court was in error in determining that the existence of a contract is a prerequisite to maintaining the tort claim. We agree.

■ In *Mid-South Beverages, Inc. v. Forrest City Grocery Co., Inc.*, 300 Ark. 204, 778 S.W.2d 218 (1989), this court recognized that no contractual relationship had to exist between the parties in order to maintain an action for tortious interference. The elements of tortious interference which must be proved are: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part

of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *United Bilt Homes, Inc. v. Sampson*, 310 Ark. 47, 832 S.W.2d 502 (1992). Clearly, the first element of the tort may be proved by demonstrating either a valid contractual relationship or a business expectancy.

█ █  Notwithstanding the fact that the trial court erroneously held that a contract must first exist in such an action, Appellant's claim must ultimately fail because Gibson is not a third party who was in a position to interfere with Appellant's continued employment with the Commission. Gibson, as Executive Director, and the Commission were one and the same in undertaking the act of terminating Appellant's employment with the Commission. The Commission cannot act on its own; rather it may act only through its officers. In *United Bilt Homes*, this court stated that, "[t]he principle has long endured in the law that a *third party* who intentionally and with malice interferes with the contractual relations of another incurs liability for his action in tort." *Id.* at 50-51, 832 S.W.2d at 503 (emphasis added). This court further observed that underlying the tort of interference is the premise that a person has a right to pursue valid contractual and business expectancies unmolested by the wrongful and malicious intermeddling of a third party. *Id.* It would hardly seem logical to hold that a party to an alleged contract or business expectancy had tortiously interfered with the other party's rights by terminating the contract or business relationship. In such an instance, the more appropriate action would be one of breach of contract.

█  Accordingly, for the foregoing reasons, we affirm the judgment of the trial court granting summary judgment to Appellee Gibson. We will sustain the trial court's decision if it is right, even though we may do so on a different basis. *Viswanathan v. Mississippi County Community College Bd. of Trustees*, 318 Ark. 810, 887 S.W.2d 531 (1994), *cert. denied*, 116 S. Ct. 550 (1995).

Affirmed.