2012 Ark. App. 482

**BOEUF RIVER FARMS, Appellant**

v.

**Larry BROWDER and Brian Browder, Appellees.**

**No. CA 11–873.**

Court of Appeals of Arkansas.

Sept. 12, 2012.

Rehearing Denied Oct. 24, 2012.

for a term to expire on December 31, 2012, and as rent, Browder was to pay BRF one-fifth of all crops grown on the premises. Browder planted a wheat crop on the land in the fall of 2008, harvested 11,561.7 bushels of wheat the following spring, and delivered the wheat to Terral Seed, a grain elevator, around June 1, 2009, with instructions that one-fifth of the crop belonged to BRF and the remaining four-fifths belonged to Browder. According to the complaint, however, BRF notified Terral Seed that it owned all of the wheat. Based on BRF's representation, Terral Seed refused to split the crop. As a result, Browder alleged that he could not sell or market his eighty percent of the wheat crop and had thus been damaged in an amount of approximately $45,000. The complaint also sought declaratory relief and raised claims of bad faith and tortious interference with business expectations.

The complaint was served on BRF on July 21, 2009, but BRF failed to file a timely answer. Browder filed a motion for default judgment on August 18, 2009. On August 24, 2009, BRF filed an answer to Browder's complaint as well as a counterclaim. For the most part, the answer generally denied the allegations of the complaint. BRF specifically denied that it notified Terral Seed that BRF owned all of the wheat that Browder had harvested. Rather, BRF affirmatively stated that it informed Terral Seed that it and Browder had a dispute concerning the ownership of the wheat in storage at Terral's facility, and BRF contended that it was Terral's decision to withhold payment for the wheat pending resolution of the dispute.

In its counterclaim, BRF argued that Browder was contractually obligated to cultivate the Ashley County farmland during the year 2009 and pay BRF one-fifth of the crops grown there as rent. BRF asserted, however, that Browder informed

Laurie A. Bridewell, Eudora; Brian G. Brooks, Attorney at Law, PLLC, by: Brian G. Brooks, for appellant.

Gibson Law Office, by: Chuck Gibson, for appellees.

DOUG MARTIN, Judge.

Appellant Boeuf River Farms, Inc. (BRF) brings this appeal from an order of the Ashley County Circuit Court granting the default-judgment motion filed by appellees Larry Browder and Brian Browder ("Browder") and a subsequent order granting Browder's motion to strike BRF's counterclaim. We find no error and affirm.

Browder filed a complaint against BRF on July 6, 2009, contending that BRF had breached the terms of an agricultural lease between Browder and BRF. The complaint alleged that the lease granted Browder a tenancy to farm property in Ashley County

BRF that the lessees were abandoning the lease but still intended to harvest the wheat. BRF objected to the harvesting of the wheat, but Browder harvested it anyway on a day when the fields were wet, thus damaging the farmland. In addition, BRF alleged that Browder's failure to operate the farm in a proper manner caused BRF's bean yields to decrease, damaging BRF in the amount of $34,000, and that Browder caused $4200 in damages to the interior of the farmhouse in which Browder had been permitted to live under the terms of the lease.

Browder filed a motion to strike BRF's untimely answer and counterclaim on August 28, 2009.[1] BRF responded by arguing that Browder's motion for default judgment should be denied because, even though BRF's answer was admittedly filed late, Browder's complaint failed to state facts that amounted to a cause of action. Specifically, BRF contended that, apart from the basic facts alleged in Browder's complaint, the remainder of the allegations—including the contention that BRF breached the lease—were legal conclusions. In addition, BRF noted that a copy of the lease agreement was attached to the complaint, but Browder failed to note the presence of Paragraph 9, which provided as follows:

> All agreements, covenants and conditions of this lease made by the Lessee shall be deemed conditions, the breach of which will entitle the Lessor, at their option, to immediately re-enter and take possession of the demised premises, provided that if the Lessor so elects such entry shall terminate all further liability of the Lessee hereunder, and provided that no delay in the exercise of such option shall be deemed a waiver thereof during the same or any subsequent default.

> The obligation of Lessee to timely plant, cultivate and harvest agricultural crops so as to utilize the demised premises according to normal farming practices in Ashley County, Arkansas, is specifically recognized as a condition of this lease.

Citing *Kohlenberger, Inc. v. Tyson's Foods, Inc.*, 256 Ark. 584, 510 S.W.2d 555 (1974), BRF argued that "when a cause of action has as an element of it meeting a condition precedent, then the plaintiff must specifically allege meeting that condition precedent before a cause of action is sufficiently alleged." BRF contended that Browder's complaint made no allegation that the "conditions precedent established by Paragraph 9 of the complaint were fulfilled"—that is, because Browder failed to meet the conditions of Paragraph 9 and breached the contract himself, BRF was entitled to take possession of the property, and accordingly, BRF's statement to Terral that it owned the wheat was actually a true statement and not the cause of the alleged breach of contract.

In addition, BRF argued that its counterclaim was not a compulsory counterclaim and should thus survive any default. On this issue, BRF urged that the transactions or occurrences giving rise to its counterclaim were separate from Browder's claims for breach of contract and that "nothing about the resolution of the complaint will determine the issues in the counterclaim." As such, BRF contended that, even if its answer were to be struck and default judgment entered against it on Browder's breach-of-contract action, the counterclaim should still stand.

The circuit court held a hearing on the motion for default judgment on October 19, 2009. In an order entered on October 22, 2009, the circuit court granted Brow-

---

1. Browder also filed a "provisional" answer to BRF's counterclaim on September 8, 2009.

der's motion for default judgment. In so doing, the court rejected BRF's reliance on *Kohlenberger, supra*, and found that Browder's complaint sufficiently stated a cause of action.

The court set the matter for a jury trial on the issue of damages; however, the case was continued several times. At some point while discovery was ongoing, the parties realized that they needed "some clarification on the existence of the counterclaim." At a hearing on April 25, 2011, the parties noted that the circuit court had not yet ruled on Browder's motion to strike BRF's answer and counterclaim. The court then determined that the motion to strike the answer and counterclaim should be granted so that BRF could take an appeal. An order to that effect was entered on May 12, 2011, granting the motion to strike "for the reasons previously stated in [the court's] order granting [default] judgment on liability." BRF filed a timely notice of appeal on June 3, 2011.[2]

## I. *Default Judgment*

 In its first argument on appeal, BRF urges that the circuit court should not have entered the default judgment against it. This court reviews a circuit court's decision not to set aside a default judgment under Rule 55 under an abuse-of-discretion standard. *Nucor Corp. v. Kilman*, 358 Ark. 107, 117, 186 S.W.3d 720, 726 (2004).

Even though BRF concedes that it did not file a timely answer and acknowledges that, as a result, the factual allegations of the complaint are deemed admitted, BRF nonetheless argues that the admitted alle-

gations must sufficiently allege a cause of action before default can be entered. In support of its argument, BRF relies on *Kohlenberger, Inc. v. Tyson's Foods, Inc.*, 256 Ark. 584, 510 S.W.2d 555 (1974), in which the supreme court established that a default judgment should not be entered when the complaint does not sufficiently allege a cause of action.

The appeal in *Kohlenberger* involved a default judgment granted to appellee Tyson Foods, Inc., in its suit against Kohlenberger to recover damages resulting from the alleged failure of an icemaker that Tyson purchased from Kohlenberger. Kohlenberger failed to timely answer Tyson's complaint, which raised a breach-of-warranty claim. In arguing that the default judgment should be set aside, Kohlenberger argued that Tyson's complaint failed to state a cause of action because, "under the allegations of the complaint there was an unrevoked acceptance of the icemaker by Tyson, there having been no allegation of either rejection or revocation of acceptance prior to the filing of the complaint[.]" *Kohlenberger*, 256 Ark. at 589, 510 S.W.2d at 560. The court then recited the following language on which BRF relies:

Appellant admits that the complaint alleges notification of breach of warranty. Consequently, appellant argues there was no basis for the recovery of special, incidental or consequential damages prayed for in the complaint. This argument brings us to a consideration, first, of the damages recoverable for a breach of warranty and, then, of the right to recovery of special, incidental and consequential damages in the light

---

2. BRF's appeal is taken pursuant to Ark. R.App. P.—Civ. 2(a)(4), which permits an interlocutory appeal from an order striking an answer or any pleading, even when issues of damages remain pending in a case where a default judgment has been granted. *See Ar-nold & Arnold v. Williams*, 315 Ark. 632, 870 S.W.2d 365 (1994) (construing Ark. R.App. P.—Civ. 2(a)(4) to authorize an appeal when an answer has been struck, even if it is not a final judgment).

of the facts alleged and those not alleged. In passing, however, we must say that appellee's positive, but unsupported, assertion that Kohlenberger's default bars it from raising these questions is without merit. *A default admits only those facts alleged in the complaint and if they are insufficient to support the judgment, it will be reversed.* Although it is unnecessary that a complaint set out the evidence relied upon or a history of transactions leading up to the essential facts, it is necessary that substantive or issuable facts be alleged, and conclusions stated cannot be considered on default. The facts constituting the cause of action must be averred by stating them in direct and positive allegations, and not by way of argument, inference or belief. Every fact and element essential to the cause of action must be stated. This means that a complaint must allege every fact which the plaintiff would be required to prove in order to recover. The facts alleged must show the existence of a right in plaintiff, the infringement of that right by defendant and that the cause of action had accrued at the time of the filing of the complaint. A judgment by default must strictly conform to, and be supported by, the allegations of the complaint, and a closer correspondence between the pleading and judgment is required than would be after a contested trial.

*Id.* at 589–90, 510 S.W.2d at 560 (emphasis added) (internal citations omitted).

In *Kohlenberger,* a breach-of-warranty action, the court discussed the pertinent provision of the Uniform Commercial Code and noted that notification of a breach of warranty is a condition precedent to recovery which must be pleaded. *Id.* at 591, 510 S.W.2d at 561. In addition, the court stated that, for a plaintiff to recover more than is allowed for breach of warranty when the goods are accepted, a plaintiff must prove that there was an effective rejection or revocation, and notification is essential before either is effective; thus, the plaintiff must plead notification, prior to the filing of the suit, of either rejection or revocation, as a condition precedent. *Id.* Tyson's complaint sought damages including both the purchase price and special and consequential damages; however, the complaint failed to sufficiently allege notice of rejection or revocation. The supreme court therefore held that Tyson was not entitled to a default judgment to recover the purchase price. *Id.* at 592, 510 S.W.2d at 561–62.

Based on *Kohlenberger,* BRF argues first that a default judgment is not available unless the facts alleged in the complaint sufficiently state a cause of action. While this is an accurate restatement of the language from *Kohlenberger,* BRF reaches too far when it urges that *Kohlenberger* also stands for the proposition that, "when a cause of action has as an element of it meeting a condition precedent, then the plaintiff must specifically allege meeting that condition precedent before a cause of action is sufficiently alleged." BRF argues that, because Browder failed to mention the "condition precedent" contained in Paragraph 9 of the lease—i.e., that any breach of the lease by the lessee (Browder) gave the lessor (BRF) the right to take possession of the property—and failed to mention that Browder did not meet the condition precedent, then the complaint failed to state a cause of action for three reasons: 1) the complaint failed to allege that the conditions precedent were fulfilled; 2) if the conditions precedent were not met, then BRF's statement that the wheat belonged to it was not a breach of contract, but was instead a true statement; and 3) a material breach, such as a failure to meet a condition precedent, excused BRF's per-

formance of the contract. Thus, BRF argues, absent an allegation that the conditions precedent were met, BRF had no obligation under the contract, and because it had no obligation under the contract, it could not have breached the contract.

We conclude, however, that BRF's reliance on *Kohlenberger* is misplaced. *Kohlenberger* was a case specifically brought as a breach-of-warranty claim under the Uniform Commercial Code, which has special pleading requirements. That is, the plaintiff in that case sought damages which required it to specifically plead or allege that it had either revoked or rejected its purchase from the defendant. *See, e.g.,* Ark.Code Ann. § 4-2-607 (Repl.2001). In *L.A. Green Seed Co. v. Williams,* 246 Ark. 463, 438 S.W.2d 717 (1969), the supreme court similarly held that the statute (which was then Ark. Stat. Ann. § 85-2-607) requires a buyer to give notice of a breach of warranty to the seller within a reasonable time after the buyer discovers or should have discovered the breach, and the giving of notice must be pleaded as a condition precedent to recovery; thus, where the complaint failed to allege notice, the complaint failed to state a cause of action. *L.A. Green Seed Co.,* 246 Ark. at 467, 438 S.W.2d at 719.

The instant case, however, is not a breach-of-warranty action brought pursuant to the Uniform Commercial Code; rather, it is a simple breach-of-contract case. BRF has failed to point this court to a case that holds that a non-UCC breach-of-contract complaint requires the pleading of a condition precedent. Instead, in order to state a cause of action for breach of contract, the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to the plaintiff from the breach. *Perry v. Baptist Health,* 358 Ark.

238, 244, 189 S.W.3d 54, 58 (2004); *Rabalaias v. Barnett,* 284 Ark. 527, 683 S.W.2d 919 (1985).

Here, taking all of the allegations in Browder's complaint as true, as we must in determining whether the complaint states a cause of action, the complaint alleged as follows:

- Browder had an agricultural leasehold interest in the relevant land owned by BRF by which Browder was granted a tenancy to farm the premises in exchange for paying one-fifth of the crops as rent (the existence of a valid and enforceable contract between the plaintiff and defendant);
- as rental for the property, BRF agreed to accept one-fifth of all gross crops produced on the land (the obligation of the defendant under the contract);
- BRF notified the grain elevator that it owned all of the wheat delivered by Browder to the elevator, instead of just its twenty percent, causing the elevator to refuse to split the crop as instructed by Browder (a violation by the defendant); and
- as a result, Browder suffered damages in an amount equal to the value of his share of the wheat delivered to Terral Seed, which was approximately $45,000 (damages resulting to the plaintiff from the breach).

As such, the trial court correctly determined that Browder's complaint sufficiently alleged a cause of action for breach of contract; correspondingly, because the complaint sufficiently stated a cause of action, we find no error in the circuit court's granting of default judgment to Browder.

BRF additionally argues that the circuit court erred in granting a default judgment on Browder's claim of tortious interference with business expectancy be-

cause the complaint did not adequately plead that claim either. We are unable to reach the merits of this argument, however, as the circuit court's order granting the default judgment makes no mention of Browder's tortious-interference claim. It is well-settled that a party must obtain a ruling from the circuit court on an issue in order to preserve an argument for appeal. *Hanks v. Sneed*, 366 Ark. 371, 235 S.W.3d 883 (2006). Because the trial court did not rule on the claim, this court has nothing to review. *See Lucas v. Wilson*, 2011 Ark. App. 584, 385 S.W.3d 891 (where there is no ruling by the trial court on an issue, there is nothing for this court to review and determine).

## II. *Counterclaim*

■ In its second point on appeal, BRF argues that the circuit court erred in striking its counterclaim alongside its answer. Rule 13(a) of the Arkansas Rules of Civil Procedure governs compulsory counterclaims and provides that a pleading

shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

In *Estate of Goston v. Ford Motor Co.*, 320 Ark. 699, 898 S.W.2d 471 (1995), the supreme court noted that the purpose behind Arkansas Rule of Civil Procedure 13(a), which governs compulsory counterclaims, is to "require parties to present all existing claims simultaneously to the court or be forever barred, thus preventing a multiplicity of suits arising from one set of circumstances." *Estate of Goston*, 320 Ark. at 706, 898 S.W.2d at 474 (citing *Bankston v. McKenzie*, 288 Ark. 65, 702 S.W.2d 14 (1986)). In that case, the plaintiff, Craig, filed a negligence suit against

Goston; Goston did not file a timely answer, and Craig obtained a default judgment. Goston subsequently filed suit against Craig based on the same car accident. Craig moved for summary judgment on the basis of res judicata, and the trial court granted the motion. On appeal, the supreme court held that res judicata did not bar Goston's claim against Craig, but Rule 13(a) did "clearly present a bar to Goston's claim." *Id.* Citing 6 Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 1417 (1990), the court noted the following:

However, if notions of estoppel or waiver are used to preclude defendant from asserting his claim in a later suit, should they apply when the first action has resulted in a consent or a default judgment? The Advisory Committee Note to Rule 13(a) only states that an independent suit is barred if the earlier action has "proceeded to a judgment," without indicating what kind of judgment is contemplated, which has the effect of leaving the question unanswered. *Typically, courts have given default judgments full effect and have held that a counterclaim omitted from an action that terminates in a default judgment will be barred from any subsequent suits.* [Emphasis added in original.]

*Id.* Thus, the court concluded that Goston's failure to present his counterclaim in the original action filed by Craig was the proper basis for the trial court's ruling that Goston was barred from raising this claim.

On appeal, BRF correctly acknowledges that a subsequent complaint is barred by a previous default judgment when the subsequent complaint would have been a compulsory counterclaim in the first case. BRF asserts, however, that its counterclaim was not compulsory, and thus, it should not have been barred from bringing it despite the default judgment

entered in favor of Browder. BRF argues that, even though its counterclaim against Browder arises from the same contract, its causes of action arose out of a different "transaction or occurrence" than the subject of Browder's claim, and thus, its counterclaim should not have been considered compulsory.

More specifically, BRF argues that Browder's complaint arose out of its "delivery of wheat to Terral Seed and the comments made by BRF about ... ownership [of the seed]," while its counterclaim, on the other hand, arose out of "Browder's anticipatory breach and their damage to the property." These two things, BRF contends, were "wholly separate" such that "nothing about the resolution of the complaint [would] determine the issues in the counterclaim."

In support of its argument, BRF cites *United–Bilt Homes, Inc. v. Sampson*, 315 Ark. 156, 864 S.W.2d 861 (1993), and *Baltz v. Security Bank of Paragould*, 272 Ark. 302, 613 S.W.2d 833 (1981), for the proposition that "one document may be the source of two independent claims, one of which is not necessarily a compulsory counterclaim to be asserted with the other." BRF urges that, even though Browder's complaint and BRF's counterclaim both stemmed from the agricultural lease between them, the causes of action alleged were entirely separate.

Those two cases, however, are distinguishable. *Sampson, supra*, was a second appeal following a supreme court decision in which the court affirmed a judgment against United–Bilt in favor of Sampson. *United Bilt Homes, Inc. v. Sampson*, 310 Ark. 47, 832 S.W.2d 502 (1992) (*Sampson I*). Sampson suffered a fire at his home, and his insurance company issued a check jointly to him and to United–Bilt, which was the loss-payee on Sampson's homeowner's insurance. Sampson and United–Bilt agreed that the check would be used

to pay to repair Sampson's home, but United–Bilt refused to pay when the repairs were completed. The contractor sued Sampson, who impleaded United–Bilt. Sampson was ultimately awarded damages against United–Bilt, and the supreme court affirmed. *Sampson I.*

The day after the court's decision in *Sampson I*, United–Bilt filed a complaint for foreclosure against Sampson. The trial court dismissed the complaint on Sampson's motion, finding that the foreclosure action was a compulsory counterclaim which should have been brought in the initial suit. On appeal, the supreme court reversed, holding that the foreclosure action was not a compulsory counterclaim because, even though the relationship of mortgagor and mortgagee existed between United–Bilt and Sampson at the time of the first suit, neither the relationship nor the mortgage was at issue in *Sampson I*. Thus, the supreme court reversed and remanded for further proceedings on the foreclosure action.

*Sampson* is distinguishable from the instant case in the sense that the two suits—the original suit involving the contractor and the subsequent foreclosure action—arose out of separate transactions or occurrences: in *Sampson I*, the transaction was the disbursement of insurance proceeds; in the second case, the transaction or occurrence was the execution of the mortgage and the subsequent default thereon. In the present case, however, Browder's complaint was premised on BRF's statements to Terral Seeds, which Browder contended was in contravention of the lease terms, while BRF's counterclaim was based on Browder's anticipatory breach of the same agreement, which purportedly led BRF to make the allegedly offending statements to Terral Seeds. In other words, both complaint and counter-

claim arose from the same transaction or occurrence.

In *Baltz, supra,* the Baltzes' predecessor in interest entered into a farming lease with B & W Farms. B & W became insolvent about the time the Baltzes bought the farmland and assigned its lease to Security Bank of Paragould. In March 1979, the Baltzes filed suit in Green County Chancery Court to terminate the lease and collect damages from B & W; in February 1980, the Baltzes filed suit in Green County Circuit Court seeking damages for Security Bank's failure to comply with and perform certain covenants contained in the lease. The chancery court case was tried just before the bank filed its answer in the circuit court case, and the circuit court subsequently dismissed that case because the parties should have joined those issues with the matters being litigated in chancery court. The supreme court cited Rule 18(a), which provides that a party asserting a claim for relief as an original claim may join any other cause of action that he may have against the opposing party. The court reversed, finding that the Baltzes' circuit-court claim for damages against Security Bank "obviously was not a counterclaim inasmuch as it sought damages from the [bank] as a result of the failure to perform its required duties in accordance with the lease. Since [Rule 13] relates only to counterclaims, it is inapplicable in the present case." *Baltz,* 272 Ark. at 305, 613 S.W.2d at 834.

*Baltz* is thus also distinguishable from the instant case in that it involved two entirely different causes of action, as well as different parties. Moreover, BRF's only argument based on *Baltz* is that its "counterclaim regarding anticipatory breach and damage to property is no different from ... the Baltzes' subsequent chancery suit for damages for breach of the lease." Without further explication or convincing argument, we are unable to find merit in BRF's argument.

In sum, the circuit court erred neither in granting Browder's motion for default judgment nor in striking BRF's counterclaim, and we affirm.

Affirmed.

HART and GLADWIN, JJ., agree.