Richard WEISS, Director, Arkansas Department of Finance
and Administration; Steve Dozier, Director, Department of Arkansas
State Police; Gail H. Stone, Executive Secretary, Arkansas State Police
Retirement System; Steve Smith, Steve Dozier, Tim Carter,
W.H. McWhirter, Blake Wilson, David Rosegrant, George B. Harp,
Trustees, Arkansas State Police Retirement System *v.*
Roger McLEMORE, Charles McLemore, and Mike Hall,
Individually and on Behalf of a Class Consisting of Members
of the Arkansas State Police Retirement System

07-12                                                   268 S.W.3d 897

Supreme Court of Arkansas
Opinion delivered November 29, 2007

*Dustin McDaniel*, Att'y Gen., by: *Patricia Van Ausdall Bell*, Ass't
Att'y Gen., for appellant.

*Newell & Hargraves,* by: *C. Burt Newell,* for appellees.

TOM GLAZE, Justice. This appeal questions whether Ark. Code Ann. § 24-6-205 (Repl. 2000) evidences an intent on the part of the General Assembly to waive the State's sovereign immunity. The underlying lawsuit began in 2005, when several Arkansas State Police officers filed suit against the State alleging that the Arkansas State Police Retirement System (ASPRS or "Retirement System") had been systematically underfunded.

The plaintiff officers in this case were active and retired "Tier I" members of the Retirement System.[1] The defendants — now Appellants — are Richard Weiss, the Director of the Arkansas Department of Finance & Administration; Steve Dozier, the Director of the Arkansas State Police; Gail H. Stone, the Executive Secretary of the Arkansas State Police Retirement System; and Steve Smith, Steve Dozier, Tim Carter, W.H. McWhirter, Blake Wilson, David Rosegrant, and George B. Harp, Trustees of the Arkansas State Police Retirement System. Collectively, the Appellants are referred to as "the State."

For many years, State Police officers received allowances for their uniforms and travel. These allowances came in the form of additional payments, received at the same time as every other paycheck, of $125.00 for "expenses" and $166.66 for a "clothing allowance." The total of these additional payments was $3,500 per year. Until 1992, this additional $3,500 per year for "expenses" and "clothing allowances" was not included on the W-2 forms issued by the Department of Finance & Administration. Beginning in 1992, apparently upon inquiry from the Internal Revenue Service, this additional sum was included on the officers' W-2 forms. However, even after the $3,500 began being reported as taxable income, that sum was not included when calculating each officer's contributions to the ASPRS.

Pursuant to Act 1071 of 1997, the Department of State Police's contributions to the Retirement System was a sum equal to 22% of "active member payroll," although that term was not

---

[1] The term "Tier I" refers to those participants in the Retirement System who were members of the System prior to Act 1071 of 1997, which created a second tier of employees in the Retirement System. Prior to 1997, members of the Retirement System were required to contribute a portion of their income to the ASPRS; after Act 1071, however, contribution was no longer mandatory.

defined by the Act. Between 1997 and 2003, the Retirement System was funded based on the 22% formula, but those calculations did not take into account the $3,500 per year that the officers were receiving for expenses and clothing allowances.

Act 1609 of 2003 provided for a one-time annual salary adjustment of $3,500 for commissioned officers.[2] Following passage of Act 1609, the State began to include the additional $3,500 as "active member payroll" for purposes of funding the Retirement System. In addition, the $3,500 began to be included in calculating retiring officers' final average compensation. It was apparently this change in the funding calculations that constituted the impetus for the instant lawsuit.

In November of 2005, the officers filed their class-action lawsuit, contending that the various state defendants had violated the law by failing to properly fund the ASPRS between 1992 and 2003. The officers also alleged that the improper funding of the retirement system constituted an illegal exaction and an impairment of contractual obligations in violation of Ark. Const. art. 2, § 17. Their complaint sought a writ of mandamus directing the State to "immediately correct the records of all class members individually and the ASPRS as a system[.]" In addition, the officers' complaint asked for a declaratory judgment to the effect that "the current method of calculation of [the plaintiffs'] retirement benefits by [the State] is in violation of statutory intent and is in breach of plaintiffs' contract with [the State]."

The State filed a motion to dismiss on December 27, 2005, in which it asserted that the officers' claims were barred by sovereign immunity. In addition, the State asserted that the officers had failed to state claims for an illegal exaction or a breach of contract.

On January 5, 2006, the officers responded to the State by filing an amended complaint in which they asserted a new cause of action based on 42 U.S.C. § 1983. In essence, the officers contended that, by failing to properly fund the ASPRS, the State had deprived them of their property without just compensation.

The trial court considered the matter solely on the pleadings and entered an order on September 5, 2006. In that order, the court found that the officers had failed to state a claim for an illegal exaction;

---

[2] In addition, Act 1609 repealed Ark. Code Ann. § 12-8-209 (Repl. 1995), the statute in which the travel and uniform allowances had previously been codified.

however, the court did find that the complaint adequately set out a claim for breach of contract. Regarding the State's sovereign immunity argument, the trial court found that § 24-6-205 provided "a limited waiver of sovereign immunity." Finally, the court agreed with the State that the plaintiffs had failed to state a claim pursuant to 42 U.S.C. § 1983, and it dismissed that claim. The State filed a timely notice of appeal on October 3, 2006, and now raises three arguments for reversal in this interlocutory appeal.

In this appeal, we are asked to interpret § 24-6-205 and decide whether that statute provides a limited waiver of sovereign immunity. We review issues of both statutory construction and constitutional interpretation *de novo. See Weiss v. Maples*, 369 Ark. 282, 253 S.W.3d 907 (2007); *Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006). On review of an issue of statutory interpretation, we are not bound by the decision of the trial court; however, in an absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *See Bryant v. Weiss*, 335 Ark. 534, 983 S.W.2d 902 (1998).

In its primary point on appeal, the State contends that the officers' suit is one against the State, and it is therefore barred by article 5, § 20 of the Arkansas Constitution, which provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." This court has consistently interpreted this constitutional provision as a general prohibition against awards of money damages in lawsuits against the state and its institutions. *See, e.g., Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997); *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990). We have held that this constitutional prohibition is not merely declaratory that the state could not be sued without her consent, but that all suits against the state were expressly forbidden. *Ark. Pub. Defender Comm'n. v. Burnett*, 340 Ark. 233, 12 S.W.3d 191 (2000); *Brown v. Arkansas State HVACR Lic. Bd.*, 336 Ark. 34, 984 S.W.2d 402 (1999); *Page v. McKinley*, 196 Ark. 331, 336, 118 S.W.2d 235 (1938). Where the pleadings show that the action is, in effect, one against the state, the trial court acquires no jurisdiction. *Burnett, supra*.

The doctrine of sovereign immunity is rigid and may only be waived in limited circumstances. *Office of Child Support Enforcement v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997). This court has recognized only two ways in which a claim of sovereign immunity may be surmounted: (1) where the state is the moving party seeking specific relief; and (2) where an act of the legislature has created a specific waiver of immunity. *Id.; see also Burnett, supra*.

The issue in this case is whether § 24-6-205 provides such a waiver. That statute provides as follows:

> (a) Should any change or error in the records of the State Police Retirement System or the Department of Arkansas State Police result in any person's receiving from the system *more or less* than he would have been entitled to receive had the records been correct, *the Board of Trustees of the State Police Retirement System shall correct the error* and, as far as is practicable, *shall adjust the payment* in such manner that the actuarial equivalent of the benefit to which the person was correctly entitled shall be paid.

> (b) The board shall have the right to recover any overpayment any person may have received from funds of the system.

(Emphasis added.)

As mentioned above, the trial court found that this statute provided a limited waiver of the State's sovereign immunity. On appeal, the State urges that, while this court has recognized legislative waivers of sovereign immunity, it has only done so when the waiver is express. For example, the State cites *Arkansas Department of Finance & Administration v. Staton,* 325 Ark. 341, 942 S.W.2d 804 (1996), and *State v. Tedder,* 326 Ark. 495, 932 S.W.2d 755 (1996), in which this court found an express legislative waiver of sovereign immunity in Ark. Code Ann. § 26-18-507(e)(3) (Supp. 1992). That statute specifically provides that a taxpayer may seek judicial relief in the face of improperly collected sales taxes, provided that a refund has been sought and the request is refused or no response is made by the Arkansas Department of Finance & Administration. In *Staton,* this court refused to certify a class action against the State where only a single taxpayer had complied with the provisions of § 26-18-507; however, the court held that, because that sole taxpayer had complied with the statute, the State's sovereign immunity was waived as to her. *Staton,* 325 Ark. at 347, 942 S.W.2d at 806. The *Tedder* court reached a similar conclusion, holding that because the proposed class of taxpayers had not complied with § 26-18-507, only the named class representative could maintain a suit against the State.

Relying on these cases, the State contrasts the "elaborate scheme" of administrative and judicial remedies established by § 26-18-507 with the language of § 24-6-205, which the State claims "provides no remedial scheme at all." Because § 24-6-205

does not provide for judicial remedies similar to those in § 26-18-507 or expressly declare that the State may be sued pursuant to § 24-6-205, the State argues that its sovereign immunity has not been waived.

The police officers, on the other hand, point to *Arkansas Department of Human Services v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998). In that case, the juvenile court ordered the Department of Human Services (DHS) to provide adequate housing, including electric and water utilities, to a family that had been adjudicated in need of services. On appeal, DHS argued, among other things, that the trial court lacked the authority to order it to restore the family's utilities. In essence, DHS argued that the court's order coerced the agency into bearing a financial burden, which DHS contended was barred by sovereign immunity. *R.P.*, 333 Ark. at 531, 970 S.W.2d at 232.

This court disagreed, concluding that there was "a waiver of sovereign immunity under the circumstances presented." *Id.* The court noted that the General Assembly may create a specific waiver of immunity, and the court concluded that the legislature had done so when it enacted Ark. Code Ann. § 9-27-332(1) (Repl. 1993), which provided that when a family is found to be in need of services, the court may order family services; among the services the court was empowered to order was the provision of cash assistance. The court held as follows:

> Given that the trial court is empowered to order family services in FINS cases to prevent a juvenile from being removed from a parent, which by definition includes cash assistance, we conclude that the General Assembly has specifically waived sovereign immunity as to DHS in such instances. Any other interpretation would effectively eviscerate the court's power to order family services in FINS cases.

*Id.* at 533, 970 S.W.2d at 233.

In the instant case, the pertinent statute, § 24-6-205, provides that, in the event of an error that results in a State Police retiree from receiving more or less than he or she would have been entitled to receive, the Board of Trustees of the ASPRS "*shall* correct the error" and "*shall* adjust the payment" so that the person may be paid correctly. (Emphasis added.) Subsection (b) of the statute gives the Board the right to recover any overpayment an officer may have received from the system. Thus, the Board is

specifically empowered to recover any overpayments. Conversely, even though the statute does not spell out the mechanism by which the Board must adjust an erroneous payment, the statute mandates that the Board "shall adjust the payment" and "shall correct the error" that led to the underpayment (or the overpayment, although that is not the situation in this case). From this mandatory language, it can easily be inferred that the legislature intended to waive the State's sovereign immunity so that an underpaid retiree might sue to have his or her underpayment corrected.

█ We acknowledge the State's argument that, because § 24-6-205 granted the Board the right to recover any overpayment to the officers but did not provide a concomitant right for an aggrieved retiree, the General Assembly must not have intended to waive the State's sovereign immunity. However, we cannot agree with such a conclusion. To construe § 24-6-205 in such a way as to preclude State Police retirees from bringing suit to compel the State to "correct [its] error" and "adjust the payment" would eviscerate the purpose of the statute. *See Ark. Dep't of Human Servs. v. R.P., supra.* Such a consequence could not have been intended by the General Assembly. *Id.* Accordingly, we hold that § 24-6-205 constitutes a limited waiver of the State's sovereign immunity.

Because we affirm the trial court on this issue, we need not reach or address the State's second argument on appeal, wherein it suggests that the officers' attempt to characterize their suit as one for injunctive and declaratory relief is merely a disguised claim for monetary relief. Because we conclude that sovereign immunity does not bar the officers' suit, it is irrelevant whether the claims for injunctive and declaratory relief are actually claims for monetary damages.[3]

Affirmed.

---

[3] The State initially raised a third point on appeal, wherein it suggested that the officers' claims for monetary, retroactive relief pursuant to 42 U.S.C. § 1983 are also barred by sovereign immunity. However, the trial court dismissed the officers' § 1983 claims because § 1983 protects only federal rights, and the officers claimed rights under Arkansas law. In its reply brief, the State withdraws its argument, conceding that the trial court dismissed this claim and stating that it "do[es] not challenge the circuit court's decision on this issue."