2013 Ark. 36

ARKANSAS DEPARTMENT OF COMMUNITY CORRECTION and State of Arkansas, Appellants

v.

CITY OF PINE BLUFF, Appellee.

No. 12–666.

Supreme Court of Arkansas.

Feb. 7, 2013.

Dustin McDaniel, Att'y. Gen., by: Scott P. Richardson, Ass't. Att'y. Gen., for appellants.

Althea Hadden–Scott, Pine Bluff City Att'y., for appellee.

JIM HANNAH, Chief Justice.

Appellants, Arkansas Department of Community Correction ("DCC") and the State of Arkansas, appeal the order of the Jefferson County Circuit Court granting declaratory judgment and injunctive relief in favor of appellee, City of Pine Bluff (the "City"). On appeal, DCC contends that the circuit court erred (1) in rejecting DCC's argument that sovereign immunity barred the City's claims; (2) in finding that venue was proper in Jefferson County; and (3) in finding that the City's decision to zone DCC property as R–1 residential was not arbitrary and capricious. We reverse and dismiss.

DCC owns a facility in Jefferson County that is part of several tracts of state land that were annexed to the City in 1999.[1]

1. When preparing for the 2000 decennial cen-  sus, the City was concerned about its declin-

Pursuant to the City's zoning policy, the annexed property was automatically zoned as R–1 residential.[2] No City zoning officials ever inspected any of the prison property. When the property at issue here was annexed, it was used to house DCC employees who traveled to the facility for training. In 2011, DCC, with the approval of the Board of Corrections (the "Board"), decided to use three existing buildings on its property to house persons who had been granted parole from ADC.

The City objected to DCC's adding transitional housing to its prison complex. On April 5, 2012, the City filed a petition in the Jefferson County Circuit Court for declaratory judgment and injunctive relief to prohibit DCC from housing persons who had been granted parole on its prison property until it received approval to do so from the City's zoning officials. In response, DCC filed a motion to dismiss, asserting the defenses of sovereign immunity and improper venue and contending that the application of R–1 residential zoning to the prison complex was arbitrary and capricious and, therefore, unenforceable.

After a hearing, the circuit court denied DCC's motion to dismiss and proceeded to a trial on the merits. Subsequently, the circuit court entered an order granting declaratory judgment and injunctive relief in favor of the City. The circuit court concluded that the language found in Arkansas Code Annotated section 16–93–1603 (Supp.2011) acted as a waiver of sovereign immunity, that venue was proper in Jefferson County, that DCC was subject to the zoning laws of the City, pursuant to section 16–93–1603(c)(2), and that the injunction would remain in effect until DCC applied to the City for a User Permit on Review ("UPOR") and a UPOR was granted. DCC appeals.

We first consider whether DCC is entitled to sovereign immunity from a suit to enjoin it from changing the use of a portion of its facility. Article 5, section 20 of the Arkansas Constitution provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." This court has extended the doctrine of sovereign immunity to include state agencies. *Ark. Game & Fish Comm'n v. Eddings*, 2011 Ark. 47, at 4, 378 S.W.3d 694, 697 (citing *Fireman's Ins. Co. v. Ark. State Claims Comm'n*, 301 Ark. 451, 455, 784 S.W.2d 771, 773 (1990)). Where the pleadings show that the action is, in effect, one against the State, the circuit court acquires no jurisdiction. *Weiss v. McLemore*, 371 Ark. 538, 541, 268 S.W.3d 897, 900 (2007).

---

ing population numbers, so it contacted the Arkansas Department of Correction, the Board of Corrections, and DCC to ask if they would annex the prison property to the City so that the City could count the prisoners as part of its population for the census. They agreed and submitted a petition requesting that the land be annexed to the City. The petition was granted.

2. According to the City's code of ordinances, an R–1 residential district is

intended for use in new single-family residential areas, and older areas platted in lots generally conforming to requirements of this district which are suited only for the use permitted and uses permitted upon re-

view of this district and would compliment [sic] and enhance the residential character of the area.

City of Pine Bluff, Ark., Code of Ordinances, § 29–101(a). The following uses are permitted in the R–1 residential district:

[s]ingle-family dwellings; [a]ccessory uses and buildings; [h]ome occupations; and [a]ny single lot subdivided and recorded as of the effective date of this chapter, with a sixty-foot width at the building line and seven thousand two hundred (7,200) square feet of area, may be used at the discretion of the zoning administrator where required R–1 setbacks can be met.

*Id.* § 29–101(b).

In determining whether the doctrine of sovereign immunity applies, the court must decide if a judgment for the City will operate to control the action of the State or subject it to liability. *LandsnPulaski, LLC v. Ark. Dep't of Corrections*, 372 Ark. 40, 42, 269 S.W.3d 793, 795 (2007). If so, the suit is one against the State and is barred by the doctrine of sovereign immunity, unless an exception to sovereign immunity applies. *See id.*, 269 S.W.3d at 795.

We conclude that a judgment against DCC would operate to control the action of the State because the judgment would allow the City to direct how DCC uses its property. Therefore, the City's suit against DCC is barred by the doctrine of sovereign immunity unless an exception applies.

This court has recognized three ways in which a claim of sovereign immunity may be surmounted: (1) where the State is the moving party seeking specific relief; (2) where an act of the legislature has created a specific waiver of sovereign immunity; and (3) where the state agency is acting illegally or if a state agency officer refuses to do a purely ministerial action required by statute. *Eddings*, 2011 Ark. 47, at 6 n. 2, 378 S.W.3d at 698 n. 2 (citing *Short v. Westark Cmty. Coll.*, 347 Ark. 497, 504, 65 S.W.3d 440, 445 (2002); *LandsnPulaski*, 372 Ark. at 43, 269 S.W.3d at 795).

In its order granting declaratory judgment and injunctive relief, the circuit court, citing Arkansas Code Annotated sections 14–54–401 et seq., found that the City had exercised the authority granted to it by the legislature to adopt land use plans and a comprehensive zoning ordinance. The circuit court further found that Arkansas Code Annotated section 16–93–1603, which addresses the powers and duties of the Board, acts as a waiver of sovereign immunity. Specifically, the circuit court found that the legislature created a waiver of sovereign immunity in section 16–93–1603(c)(2) because that statute requires compliance with local zoning ordinances before a transitional housing facility can operate. Section 16–93–1603 provides in relevant part:

(a) The Board of Corrections shall promulgate rules that shall set minimum standards for all transitional housing facilities in the State of Arkansas.

(b)(1) . . . .

(2) The transitional housing facility shall comply with all the standards set by the rules established by the Board of Corrections under subsection (a) of this section.

(c) The rules described in subsection (a) of this section shall include at least the following:

(1) . . . .

(2) Compliance with any local zoning ordinances;

. . . .

Ark.Code Ann. § 16–93–1603(a), (b)(2), (c)(2).

DCC contends that section 16–93–1603 contains no declaration of legislative intent to waive sovereign immunity. DCC asserts that section 16–93–1603 includes no provision that assigns licensing, rulemaking authority, or enforcement authority to any entities other than the Board or DCC. In addition, DCC asserts that there is no statutory provision indicating that "compliance with any local zoning ordinances" means that municipal corporations are vested with veto power over the Board and DCC.

A statutory waiver of sovereign immunity may be express or implied. *See, e.g., State v. Tedder*, 326 Ark. 495, 496, 932 S.W.2d 755, 756 (1996) (noting that Ark.

Code Ann. § 26–18–507(e)(2)(A) (Repl. 1992) expressly provides that a taxpayer may sue the State for an improperly collected sales tax after a refund has been sought and refused or the ₁₆Commissioner has not acted upon the taxpayer's request); *McLemore,* 371 Ark. at 544, 268 S.W.3d at 901–02 (holding that the court could infer from the language used in Ark.Code Ann. § 24–6–205 (Repl.2000) that the legislature intended to waive the State's sovereign immunity so that an underpaid retiree might sue to have his or her underpayment corrected).

In the instant case, section 16–93–1603 does not contain an express waiver of sovereign immunity; therefore, we must determine whether, as the City argues, the statute contains an implied waiver of sovereign immunity. In support of its contention that section 16–93–1603 provides an implied waiver of sovereign immunity, the City cites *McLemore, supra,* and *Arkansas Department of Human Services v. R.P.,* 333 Ark. 516, 970 S.W.2d 225 (1998). At issue in *McLemore* was whether Arkansas Code Annotated section 24–6–205 (Repl.2000) provided an implied waiver of sovereign immunity. That statute provided that, in the event of an error that resulted in a State Police retiree from receiving more or less than he or she would have been entitled to receive, the Board of Trustees of the Arkansas State Police Retirement System "shall correct the error" and "shall adjust the payment" so that the person may be paid correctly. *See* Ark.Code Ann. § 24–6–205(a). Section 24–6–205(b) gave the Board the right to recover any overpayment the officer may have received from the system. This court concluded that section 24–6–205 provided an implied waiver of sovereign immunity, stating that,

even though the statute does not spell out the mechanism by which the Board must adjust an erroneous payment, the statute mandates that the Board "shall adjust the payment" and "shall correct the error" that led to the underpayment (or the overpayment, although that is not the situation in this case). From this mandatory language, it can easily be inferred that the legislature intended to waive the State's sovereign immunity so that an underpaid retiree might sue to have his or her ₁₇underpayment corrected.

We acknowledge the State's argument that, because § 24–6–205 granted the Board the right to recover any overpayment to the officers but did not provide a concomitant right for an aggrieved retiree, the General Assembly must not have intended to waive the State's sovereign immunity. However, we cannot agree with such a conclusion. To construe § 24–6–205 in such a way as to preclude State Police retirees from bringing suit to compel the State to "correct [its] error" and "adjust the payment" would eviscerate the purpose of the statute. *See Ark. Dep't of Human Servs. v. R.P., supra.* Such a consequence could not have been intended by the General Assembly. *Id.* Accordingly, we hold that § 24–6–205 constitutes a limited waiver of the State's sovereign immunity.

*McLemore,* 371 Ark. at 544, 268 S.W.3d at 901–02.

Similarly, this court concluded that there was a waiver of sovereign immunity "under the circumstances presented" in *R.P., supra.* In that case, the juvenile court ordered the Department of Human Services ("DHS") to provide adequate housing, including electric and water utilities, to a family adjudicated in need of services. DHS contended that the juvenile court's order coerced DHS, a state agency, into bearing a financial burden, which is

barred by the doctrine of sovereign immunity.

This court rejected DHS's argument, concluding that the legislature had created a waiver of immunity when it enacted Arkansas Code Annotated section 9–27–332(1) (Repl.1993), which provided that when a family is in need of services, the court may order "family services," including "cash assistance." *R.P.*, 333 Ark. at 531–32, 970 S.W.2d at 232–33 (citing Ark. Code Ann. § 9–27–303(17) (Repl.1993)). This court stated that,

> [g]iven that the trial court is empowered to order family services in FINS cases to prevent a juvenile from being removed from a parent, which by definition includes cash assistance, we conclude that the General Assembly has specifically waived sovereign immunity as to DHS in such instances. Any other interpretation would effectively eviscerate the court's power to order family services in FINS cases.

*Id.* at 532, 970 S.W.2d at 233.

The City asserts that, in this case, section 16–93–1603 must be construed to contain an implied waiver of sovereign immunity in order to carry out the purpose of the statute. The City states that if no implied waiver is found in the statute, then the City cannot enforce municipal land-use regulations and protect the interests of the public against state entities. In addition, the City argues that it cannot be assumed that the General Assembly imposed the obligation on DCC to honor municipal-zoning regulations but left the municipality powerless to enforce the regulations.

Section 16–93–1603 assigns to the Board the responsibility to promulgate rules that "set minimum standards for all transitional housing facilities in the State of Arkansas,"

and directs that those standards must include, among other things, "[c]ompliance with any local zoning ordinances." Ark. Code Ann. § 16–93–1603(a), (c)(2). The purpose of the statute is not, as the City asserts, to give the City the power to enforce its zoning regulations. Rather, the purpose of the statute is to set out the authority and obligations of the Board. Section 16–93–1604(a) (Supp.2011) provides that DCC "shall implement the rules described in section 16–93–1603," and section 16–93–1604(b)(1) provides that DCC "shall be responsible for the enforcement of the rules" established by the Board under section 16–93–1603. In other words, the legislature specifically provided in 16–93–1604(b)(1) that the entity responsible for the enforcement of compliance with a municipality's zoning ordinance was not the municipality, but DCC, a state agency. We find nothing in the statutory scheme that indicates a legislative intent to waive sovereign immunity.

The circuit court erred in concluding that the General Assembly intended to waive the State's sovereign immunity in section 16–93–1603. We hold that the circuit court lacked jurisdiction to hear the City's petition pursuant to the doctrine of sovereign immunity.[3] Accordingly, we reverse and dismiss this case.

Reversed and dismissed.

BAKER, J., dissents.

KAREN R. BAKER, Justice, dissenting.

The majority erroneously concludes that the General Assembly did not intend to waive the State's sovereign immunity in Ark.Code Ann. § 16–93–1603 (Supp.2011). I respectfully dissent.

Section 16–93–1603(c) provides that the Board shall promulgate rules that "shall include at least the following":

> the court to address DCC's remaining arguments.

---

**3.** Because we decide this appeal on the issue of sovereign immunity, there is no need for

(1) Compliance with any local health and safety codes, including housing codes, fire codes, plumbing codes, and electrical codes, set by the jurisdiction or jurisdictions in which the transitional housing facility is located;

(2) Compliance with any local zoning ordinances;

(3) Compliance with any state and federal health and safety codes;

(4) Consideration of geographic dispersement of transitional housing facilities;

(5) Allowable ratio of transitional housing facility square footage to residents; and

(6) Allowable ratio of bathing facilities and restroom facilities to residents

In reviewing the requirements for transitional housing facilities, Ark.Code Ann. section 16–93–1601 (Supp.2011) states that the intent of the General Assembly is "to provide regulations to protect the individuals in the programs and to protect the neighborhoods and communities in which the programs and facilities are located." The language "shall include at least the following" comports with the stated intent of the General Assembly under section 16–93–1601, as the requirements serve to provide a safe environment for the parolees as well as the surrounding community.

In *Weiss v. McLemore,* 371 Ark. 538, 268 S.W.3d 897 (2007), we addressed the waiver of sovereign immunity. In that case, several Arkansas State Police officers brought a class-action lawsuit against the State contending that the Arkansas State Police Retirement System (ASPRS) had been underfunded. The State argued that the General Assembly did not intend to waive its sovereign immunity when the pertinent statute did not expressly declare that the State may be sued. *Id.* at 543, 268 S.W.3d at 901. In *Weiss,* the perti-

nent statute provided that, in the event of an error, the Board of Trustees of the ASPRS "shall correct the error" and "shall adjust the payment" so that the retiree may be paid correctly. *Id.* We considered this to be mandatory language, and stated that "it can easily be inferred that the legislature intended to waive the State's sovereign immunity so that an underpaid retiree might sue to have his or her underpayment corrected." *Id.* at 544, 268 S.W.3d at 902. Further, we explained that any other interpretation would eviscerate the purpose of the statute. *Id.*

By including the language "shall include at least the following" the General Assembly clearly did not intend for the Board to disregard the minimum requirements of section 16–93–1603(c) and did not intend for the State to be able to claim the protection of sovereign immunity. As in *Weiss,* the language "shall include at least the following" should be considered mandatory.

Additionally, precluding the City of Pine Bluff from seeking recourse will eviscerate the purpose of the statute. In fact, the majority's holding provides that not only is it discretionary with the Board whether or not they will comply with local zoning ordinances but that the Board may also disregard all of section 16–93–1603's requirements, including compliance with state and federal health and safety codes, fire codes as well as plumbing codes. This is a absurd result that directly conflicts with the legislature's stated purpose. Accordingly, I would affirm the circuit court's finding that the legislature created an implied waiver of sovereign immunity in section 16–93–1603(c).

HART, J., joins in this dissent.