SLIP OPINION

Cite as 2016 Ark. 253

# SUPREME COURT OF ARKANSAS

**No.** CV-15-480

CALVIN JOHNSON, IN HIS OFFICIAL CAPACITY, AND BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS

APPELLANTS

V.

EUGENE BUTLER

APPELLEE

**Opinion Delivered** June 9, 2016

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [CV-2013-263]

HONORABLE TIMOTHY DAVIS FOX, JUDGE

<u>REVERSED AND DISMISSED</u>.

**ROBIN F. WYNNE, Associate Justice**

Appellee Eugene Butler filed suit against appellees Calvin Johnson, in his official capacity,[1] and the Board of Trustees of the University of Arkansas (collectively, the University or appellants), alleging violation of the Arkansas Whistle-Blower Act (AWBA), Ark. Code Ann. § 21-1-601 et seq., related to his termination from his job as a police officer at the University of Arkansas at Pine Bluff (UAPB). The University filed a motion to dismiss pursuant to Arkansas Rule of Civil Procedure 12(b)(6), asserting that appellee's third amended complaint failed to state a cause of action that is not barred by sovereign immunity, and the circuit court denied the motion. Rule 2(a)(10) of the Arkansas Rules of Appellate Procedure–Civil permits an appeal from an interlocutory "order denying a motion to dismiss . . . based on the defense of sovereign immunity." We reverse and dismiss because the

---

[1] The complaint does not state what Calvin Johnson's official capacity is or allege any facts specifically against Johnson.

complaint fails to state a factual basis for Butler's claim under the AWBA and therefore the appellants are entitled to sovereign immunity.

In his third amended complaint,[2] Butler alleged the following. Butler was hired by UAPB as a police officer in 2001. He was promoted to detective, and under Chief of Police Fred Weatherspoon, lead detective. After Chief Weatherspoon was fired, Major Maxcie Thomas was named interim chief of police. Chief Thomas "verbally attacked" Butler during two meetings "in attempt to provoke him into insubordination." Butler goes on to allege that there were competing "plans" for the department—the chancellor's and Chief Thomas's—and that he (Butler) was appointed to the position of major while Chief Thomas was not working due to health problems. Further,

> 18. Several employees were lost during this time and the Department was short of staff. The Officers wanted to meet with Chief Thomas and Plaintiff sent him a memo in regards to that. During the meeting, Chief Thomas immediately started verbally attacking Plaintiff in front of the Officers. He accused Plaintiff of being responsible for the shortage; but everyone looked at him in disbelief. Thomas was acting this way because of Plaintiff's reports to Chancellor Davis, who was an appropriate authority under the [AWBA].
> 19. Another one of Plaintiff[']s duties was being in charge of security of the Harrold Complex Dormitory. The Chancellor gave Rita Ticey the position of Administrator and she was also the Chancellor's assistant. Ticey dealt with everything dealing with

---

[2] Butler first filed a complaint in the Jefferson County Circuit Court in August 2012. That court transferred the case to the Pulaski County Circuit Court pursuant to Arkansas Code Annotated section 16-106-101(d). Pertinent to this appeal, the circuit court on June 10, 2013, granted the University's motion to dismiss under Rule 12(b)(6) on the basis that the facts alleged in the complaint did not meet the elements for a violation of the AWBA; the order stated that the motion to dismiss based on sovereign immunity was denied. Butler filed an amended complaint, the University filed a second motion to dismiss, and Butler responded that he "had no further facts that he can allege other than what is in the complaint." He stated that the amendment to the complaint "merely correct[ed] typographical errors and clarifie[d] the nature of the audit." In March 2015, appellants filed a motion for judgment on the pleadings, expressly seeking a specific ruling regarding appellants' sovereign immunity. Butler filed a response and a third amended complaint. Appellants filed a motion to dismiss the third amended complaint, as detailed above.

SLIP OPINION

money. She was also the person that checked all the paper work dealing with time sheets and payroll. Ticey purchased and paid all the bills for the Harrold complex. Due to the fact that Plaintiff was not always around, Ticey would sign his name to time sheets.

20. Sometime later an audit was done of the Harrold Complex in order to determine of [sic] public funds had been wasted or stolen. The auditors asked Plaintiff questions in regards to his signature. They questioned Plaintiff about two of his signatures being on numerous time sheets; Rita Ticey and a worker in the Chancellor's Office signed Plaintiff[']s name. They asked Plaintiff if he gave them permission to sign his name. Plaintiff told them yes. They asked Plaintiff if he signed the signature card for them to sign his name and he said no. They showed Plaintiff some documents and he pointed out his actual signature. They talked to Plaintiff for approximately ten minutes. A few days later the things Plaintiff told them had been changed. They told the Chancellor that Plaintiff did not authorize Ticey to sign his name which was a lie. She had talked to Plaintiff and told him that she was going to sign his name because he was out of place. This was normal for others to sign your name. It was apparent that the auditors were not seeking the truth from Plaintiff. They also wanted to know if Plaintiff was related to Ticey and they were told no. Plaintiff therefore participated in an investigation of waste or violation of the employee code of conduct.

21. During the latter part of December 2011 or the first part of January 2012, Plaintiff was tricked to the University Counsel's Office by Chief Maxcie Thomas. He told Plaintiff that he needed to meet with him in regards to some cases Plaintiff worked. Plaintiff took the files with him and when he got there, Chief Thomas was there also. The University counsel, Jeff Bell, another Attorney and Maxcie Thomas were in the conference room. At all times relevant, Jeff Bell was acting within the scope of his employment as a lawyer for the Defendant. After the interview began, they asked Plaintiff a few questions and then the female attorney left. Goswick then entered the room. Attorney Bell and Goswick immediately started questioning Plaintiff in regards to the audit. The audit was an investigation, hearing, court proceeding, legislative or other inquiry, or in any form of administrative review to determine waste or theft of public money.

22. The information Plaintiff told them was true. Jeff Bell constantly told Plaintiff that he was lying. Plaintiff kept telling them what he was saying was the truth. They told Plaintiff that the Chancellor was making a fool out of him. They told Plaintiff if he told them what they need to know that he would protect him. There was nothing to tell and he became agitated. At one point he asked Chief Thomas if Plaintiff did any work for him. Chief Thomas lied and told him that Plaintiff only did work and ran errands for the Chancellor and Ticey.

23. If any money was mismanaged Plaintiff had nothing to do with it. Maxcie Thomas has lied on Plaintiff on numerous occasions. He had made it a point to do everything he could to get Plaintiff fired. Plaintiff had verbally complained on him and filed a grievance on him. This was protected activity as well. Thomas has belittled

> Plaintiff In front of Dr. Herts, the grievance Officer for the University. This was a violation of the Defendant's code of conduct.
>
> 24. Shortly after the meeting with Bell and Thomas ended, Bell told Plaintiff he would be terminated because of his participation in the investigation and his communication with the auditors. As Bell promised, on February the 24, 2012 Plaintiff was terminated.

Butler claims that he left personal items, including a printer and refrigerator, at his office and that Chief Thomas has refused to release his property. Butler goes on to state that, pursuant to the AWBA, he was a public employee working for a public employer when he "reported waste or a violation of UAPB's code of ethics or responsibilities, and was terminated in retaliation for his report and participation in a protected activity." Finally, he states that he "participated in [an] investigation, hearing, court proceeding, legislative or other inquiry, or in any form of administrative review and was terminated because he refused to lie." Butler alleges that as a direct and proximate cause of UAPB's[3] adverse action, he has suffered wage loss and seeks all remedies available to him under the AWBA, including reinstatement, fringe benefits, and retirement credits. Appellants filed a motion to dismiss the third amended complaint as being barred by the doctrine of sovereign immunity on the grounds that (1) it is an action against the State of Arkansas, and article 5, § 20 of the Arkansas Constitution expressly prohibits the General Assembly from waiving the State's sovereign immunity from suit in her own courts; and (2) it fails to state a claim that would permit suit against a state official. The circuit court denied the motion without explanation, and this timely appeal followed.

---

[3] The third amended complaint erroneously refers to UAMS in two places.

Before reaching the merits, we address the concerns raised by the dissenting justices that this court lacks jurisdiction to hear this interlocutory appeal because the trial court failed to specifically rule on sovereign immunity. Those concerns are misplaced because the sole issue in the motion to dismiss was sovereign immunity, and the trial court's order operates as a ruling on that issue. This case is thus distinguishable from *Arkansas Lottery Commission v. Alpha Marketing*, 2012 Ark. 23, 386 S.W.3d 400, in which the Arkansas Lottery Commission moved for dismissal on multiple grounds, only one of which was based on the defense of sovereign immunity, and the trial court entered a detailed order but did not specifically rule on sovereign immunity. Under those circumstances, this court held that we did not acquire jurisdiction and dismissed the appeal without prejudice, so that the Commission could return to circuit court to obtain a ruling for this court to review. Here, we have a ruling on the issue of sovereign immunity and it is appropriate to address the merits of the appeal. *See also Ark. Dep't of Human Servs. v. Fort Smith Sch. Dist.*, 2015 Ark. 81, 455 S.W.3d 294.

In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Ark. State Claims Comm'n v. Duit Constr. Co.*, 2014 Ark. 432, 445 S.W.3d 496. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* However, our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*

SLIP OPINION

On appeal, appellants argue that the circuit court erred in denying the motion to dismiss Butler's AWBA law suit because it is barred by sovereign immunity. For their first subpoint, appellants contend that the General Assembly has no legal authority to waive the State's sovereign immunity set out in article 5, § 20 of the Arkansas Constitution. They cite cases such as *Arkansas State Highway Commission v. Nelson Brothers*, 191 Ark. 629, 87 S.W.2d 394 (1935) ("It is our settled conviction that the state cannot give its consent to the maintenance of an action against it"; overruling *Arkansas State Highway Comm'n v. Dodge*, 186 Ark. 640, 55 S.W.2d 71 (1932)), and *Fairbanks v. Sheffield*, 226 Ark. 703, 706, 292 S.W.2d 82, 84 (1956) (Article 5, § 20 is mandatory and cannot be waived by the General Assembly.). Appellants contend that more recent cases recognizing an exception to sovereign immunity when it has been waived by the General Assembly are contrary to the express dictates of article 5, § 20. *E.g., Ark. Dep't of Fin. & Admin. v. Staton*, 325 Ark. 341, 942 S.W.2d 804 (1996); *Ark. Dep't of Fin. & Admin. v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996); *Short v. Westark Cmty. Coll.*, 347 Ark. 497, 504, 65 S.W.3d 440, 445 (2002); *Arkansas Dep't of Cmty. Correction v. City of Pine Bluff*, 2013 Ark. 36, 425 S.W.3d 731. As set out below, our disposition of this case makes it unnecessary to reach this argument.

Next, appellants argue that Butler's complaint does not state a factual basis for any equitable exception to sovereign immunity. One exception to the doctrine of sovereign immunity is that equity has jurisdiction to enjoin or restrain State officials or agencies from acts which are *ultra vires,* in bad faith, or arbitrary and capricious. *See Arkansas Tech Univ. v. Link*, 341 Ark. 495, 503, 17 S.W.3d 809, 814 (2000). No such allegations are contained in the third amended complaint, and Butler's response admits as much by focusing solely on

SLIP OPINION

the AWBA. Appellants further argue that even if it were possible for the AWBA to waive

the State's sovereign immunity, Butler fails to state a claim under its provisions. We agree.

The AWBA prohibits retaliation as follows:

> (a)(1) A public employer shall not take adverse action against a public employee because the public employee or a person authorized to act on behalf of the public employee communicates in good faith to an appropriate authority:
> (A) The existence of waste of public funds, property, or manpower, including federal funds, property, or manpower administered or controlled by a public employer; or
> (B) A violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of the state.
> (2) The communication shall be made at a time and in a manner which gives the public employer reasonable notice of need to correct the waste or violation.
> (b)(1) For purposes of subsection (a) of this section, a public employee communicates in good faith if there is a reasonable basis in fact for the communication of the existence of waste or of a violation.
> (2) Good faith is lacking when the public employee does not have personal knowledge of a factual basis for the communication or when the public employee knew or reasonably should have known that the communication of the waste or of the violation was malicious, false, or frivolous.
> (c) A public employer shall not take an adverse action against a public employee because the employee participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or in any form of administrative review.
> (d) A public employer shall not take an adverse action against a public employee because an employee has objected to or refused to carry out a directive that the employee reasonably believes violates a law or a rule or regulation adopted under the authority of laws of the state or a political subdivision of the state.
> (e) A public employer shall not take an adverse action against a public employee because of a report of a loss of public funds under § 25-1-124.

Ark. Code Ann. § 21-1-603 (Repl. 2004).

We turn now to the issue before us in this interlocutory appeal: sovereign immunity.

Sovereign immunity for the State of Arkansas arises from express constitutional declaration.

*Grine v. Bd. of Tr.*, 338 Ark. 791, 796, 2 S.W.3d 54, 58 (1999). Article 5, section 20 of the

Arkansas Constitution provides that "[t]he State of Arkansas shall never be made defendant

7

in any of her courts."[4]  Sovereign immunity is jurisdictional immunity from suit, and jurisdiction must be determined entirely from the pleadings. *Ark. Tech Univ. v. Link*, 341 Ark. 495, 501, 17 S.W.3d 809, 812 (2000). In *Smith v. Daniel*, 2014 Ark. 519, 452 S.W.3d 575, this court held that when the legislature authorized a cause of action against a "public employer" in the AWBA, it expressly waived sovereign immunity. Here, the only basis alleged for surmounting the State's sovereign immunity was that "[t]he state of Arkansas has waived its sovereign immunity for actions arising under the [AWBA]." For purposes of a motion to dismiss, we treat only the facts alleged in a complaint as true but not a party's theories, speculation, or statutory interpretation. *Ark. State Claims Comm'n v. Duit Constr. Co.*, 2014 Ark. 432, at 8, 445 S.W.3d 496, 503.

Here, Butler's complaint does not identify any conduct attributable to either Johnson or the Board that violates the AWBA. While he makes the conclusory statement that he was terminated for reporting waste or a violation of UAPB's code of ethics, it is unclear what, if anything, he actually reported. Furthermore, it is unclear what he refused to lie about or that he was terminated because he refused to lie. Viewing the third amended complaint in the light most favorable to Butler, he has failed to state facts that would entitle him to relief under the AWBA and that would constitute a waiver of sovereign immunity under that statute.

---

[4] This court has stated that a suit against a state official in his or her official capacity is not a suit against that person; rather it is a suit against that official's office. *Ark. Tech Univ.*, 341 Ark. at 502, 17 S.W.3d at 813. Also, a suit against the board of trustees of a state university is a suit against the State. *Id.*

In his response brief, Butler cites *Crawford County v. Jones*, 365 Ark. 585, 232 S.W.3d 433 (2006). In *Jones*, this court reversed the grant of a directed verdict on the plaintiff's AWBA claim; the issue for this court to resolve was whether Jones's actions of reporting alleged misdeeds to quorum court members constituted reporting to the "appropriate authorities." This court answered that question in the affirmative and held that the evidence in that case created a fact question for the jury. That case is readily distinguishable in that, at the directed-verdict stage, there had been evidence presented that created a fact question under the AWBA.

We hold that the circuit court erred in denying appellants' motion to dismiss under Rule 12(b)(6) because Butler has failed to state a claim under the AWBA; therefore, no exception to sovereign immunity exists and this suit is barred by the doctrine of sovereign immunity as set forth in Article 5, section 20, of the Arkansas Constitution. Because Butler has failed to state a claim sufficient to establish an exception to sovereign immunity under the AWBA, we need not reach the issue of whether the General Assembly can waive the State's sovereign immunity.

Reversed and dismissed.

Special Justice R. MARGARET DOBSON concurs.

DANIELSON and HART, JJ., and Special Justice ROBERT L. JONES III dissent.

BRILL, C.J., and GOODSON, J., not participating.

**R. MARGARET DOBSON, Special Justice, concurring.** Although I concur with the majority regarding the disposition of the case, I respectfully disagree with the reasoning.

The majority has held the complaint fails to state a factual basis for a claim under the AWBA and thus the court need not address whether the General Assembly has the legal authority to waive the State's sovereign immunity.

In paragraph 20 of his third amended complaint, Appellee Eugene Butler alleged that "an audit was done of the Harold Complex in order to determine of [sic] public funds had been wasted or stolen." He was questioned regarding his signature on time cards. In paragraph 21, he alleges that he was later questioned in regard to the audit, and in paragraph 24, he states he was told he would be terminated because of his participation in the investigation and his communication with the auditors.

The AWBA in Ark. Code Ann. § 21-1-6-3(c) (Repl. 2004) states, "A public employer shall not take an adverse action against a public employee because the employee participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or in any form of administrative review."

An audit which was done in order to determine if public funds had been wasted or stolen is an inquiry which is covered by the AWBA. Appellee Butler alleges he reported information in an audit and was then told he would be terminated because of his participation in the investigation and his communication with the auditors.

I believe Appellee Butler has stated a claim under the AWBA, and we must address the General Assembly's legal authority to waive sovereign immunity.

Three of my colleagues, through their dissents, have stated that the trial court's ruling did not specifically address sovereign immunity and thus this court does not have jurisdiction to address the matter in an interlocutory appeal. The State's motion to dismiss plaintiff's

third amended complaint points out that the prior orders of the Court had not addressed sovereign immunity. The State's motion then sets forth: "Out of an abundance of caution, to more clearly reflect the Court's ruling on the issue of sovereign immunity and address the issue of legislative waiver, the University filed its motion for judgment on the pleadings regarding the issue of sovereign immunity." The defense of sovereign immunity is the sole issue under the State's motion to dismiss plaintiff's third amended complaint. Thus, although the trial court's order did not use the words "sovereign immunity," the denial of the State's motion can be nothing other than a ruling on the issue of sovereign immunity.

I would reverse the trial court on the issue of sovereign immunity. Article 5, § 20 of the Arkansas Constitution states, "The State of Arkansas shall never be made a defendant in any of her courts." In *Arkansas Department of Human Services. v. Fort Smith School District*, 2015 Ark. 81, at 6-7, 455 S.W.3d 294, 299, we stated:

This court has recognized three ways in which a claim of sovereign immunity may be waived: (1) where the State is the moving party seeking specific relief; (2) where an act of the legislature has created a specific waiver of sovereign immunity; and (3) where the state agency is acting illegally or if a state-agency officer refuses to do a purely ministerial action required by statute.

The first listed "exception" is not, in actuality, an exception, but is a distinction. Where the State brings a lawsuit, it is clearly not being made "a defendant in any of her courts." Appellee Butler's claims do not fit into this "exception" to sovereign immunity.

Likewise, the third listed "exception" is not, in actuality, an exception, but is a distinction. It still does not allow the State to be made a defendant in her own court.

Rather, "[w]e have recognized that officers of state agencies may be enjoined from acts that are *ultra vires*, in bad faith or arbitrary." *Cammack v. Chalmers*, 284 Ark. 161, 163, 680 S.W.2d 689, 690 (1984). Where the underlying reason for an action is "to compel the States to redress a past injury, [it] unquestionably constitutes[s] a suit against the State." *Bryant v. Ark. State Hwy. Com.*, 233 Ark. 41, 44, 342 S.W.2d 415, 417 (1961). Appellee Butler's third amended complaint does not identify any conduct attributable to either Johnson or the Board that violates the AWBA. He seeks redress for a wrong. He seeks monetary damages. This is a suit against the State and is barred by sovereign immunity.

The second listed "exception" is the one that is troublesome. If this "exception" is allowed, it will truly create an "exception" to the Constitutional prohibition against making the State a defendant in her own courts.

The question of whether the legislature can waive the State's sovereign immunity was directly considered by this Court in 1935 in *Arkansas State Highway Commission v. Nelson Brothers*, 191 Ark. 629, 87 S.W.2d 394 (1935). The *Nelson Brothers* court, after in-depth consideration of the issue, held, "It is our settled conviction that the State cannot give its consent to the maintenance of an action against it and the court below was without jurisdiction." *Id.* at 636, 87 S.W.2d at 397.

Consistent with *Nelson Brothers*, in 1956, this court held a legislative act to be an "unconstitutional attempt on the part of the legislature to consent to a suit against the State" in *Fairbanks v. Sheffield*, 226 Ark. 703, 706, 292 S.W.2d 82, 84 (1956). In 1961, the court noted that a suit against the Highway Commission was a suit against the State and stated, "[I]t has been settled that the Highway Commission cannot be sued, and *this immunity cannot*

*be waived even by the legislature.*" *Bryant v. Ark. State Hwy. Comm'n.*, 233 Ark. 41, 43, 342 S.W.2d 415, 416 (1961) (emphasis added).

In *Fireman's Insurance Company v. Arkansas State Claims Commission*, 301 Ark. 451, 455, 784 S.W.2d 771, 773 (1990), this court noted "the completeness of the intent of such immunity" and stated, "As early as *Pitcock v. State*, 91 Ark. 527, 121 S.W. 742 (1913), this court held that the constitutional prohibition was not merely declaratory that the state could not be sued without her consent, but that *all* suits against the state were expressly forbidden."

Then, without examination of the issue of whether the legislature can consent and waive sovereign immunity, two opinions were issued by this court in 1996, *Arkansas Department of Finance and Administration v. Tedder*, 326 Ark. 495 (1996), and *Arkansas Department of Finance and Administration v. Staton*, 325 Ark. 341 (1996), which indicated an act of the legislature could waive immunity. In an addendum to the dissent in *Staton*, it is noted: "The essence of DFA's sovereign immunity argument is that sovereign immunity prohibits suits against the State except when permission to sue has been granted." *Staton*, 325 Ark. at 351, 942 S.W.2d at 809. It appears that the State's attorney in this case did not raise the question of whether the legislature could waive sovereign immunity. The *Staton* and *Tedder* courts certainly did not analyze the issues or even acknowledge the prior rulings on this issue.

Following the issuance of *Staton* and *Tedder*, our opinions began citing to these cases, and then to cite to the cases that followed them, for the premise that an act of the legislature can waive sovereign immunity. *E.g.*, *State of Office of Child Support Enforcement v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997) (holding OCSE did not waive immunity by bringing

a paternity action); *Simmons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007) (holding the Civil Rights Act did not waive immunity); and *Arkansas Dep't of Cmty. Correction v. City of Pine Bluff*, 2013 Ark. 36, 425 S.W.3d 731 (holding the state statute did not expressly waive immunity). None of these have examined the holding in *Nelson Brothers* or analyzed the question of whether the constitution prohibits the legislature from waiving sovereign immunity.

It is axiomatic to say that the legislature cannot issue an act to override the constitution. I am persuaded by the analysis in *Nelson Brothers*. Thus, to the extent these later opinions hold otherwise, they are adverse to the holdings in our previous cases and to the Arkansas Constitution. I would hold that the General Assembly's attempt to waive sovereign immunity through the AWBA is unconstitutional.

For this reason, I join the majority in reversing the trial court.

**PAUL E. DANIELSON, Justice, dissenting.** I respectfully dissent. This court lacks jurisdiction to hear this appeal because there was no specific ruling on the issue of sovereign immunity. Arkansas Rule of Appellate Procedure–Civil 2(a)(10) (2015) permits an appeal from an interlocutory order denying a motion to dismiss based on the defense of sovereign immunity. *See Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, 386 S.W.3d 400. However, before an interlocutory appeal may be pursued from the denial of a motion to dismiss on the ground of sovereign immunity, we must have in place an order denying the motion to dismiss on that basis. *Id.*

Here, the University filed a motion to dismiss the third amended complaint asserting that the claims against the University should be dismissed pursuant to Arkansas Rule of Civil

Procedure 12(b)(6) because Butler failed to state a cause of action not barred by sovereign immunity. The motion also states that Butler's complaint is barred by article 5, § 20 of the Arkansas Constitution because (1) it is an action against the State of Arkansas, and article 5, section 20 of the Arkansas Constitution expressly prohibits the General Assembly from waiving the State's sovereign immunity from suit in her own courts; and (2) it fails to state a claim that would permit suit against a state official.

The circuit court denied the motion to dismiss, stating in its order only that

[o]n the 4th day of May, 2015, the *Defendants' Amended Motion for Judgment on the Pleadings* filed March 19, 2015, and the *Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint* filed March 25, 2015, came on for consideration. The court finds that the *Defendants' Amended Motion for Judgment on the Pleadings* and the *Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint* should be and hereby are denied.

The majority correctly points out that "[t]he circuit court denied the motion [to dismiss] without explanation." Despite this acknowledgment, the majority reverses and dismisses the case based on its conclusion that "the circuit court erred in denying appellants' motion to dismiss under Rule 12(b)(6) because Butler has failed to state a claim under the AWBA; therefore, no exception to sovereign immunity exists."

The majority states that "the sole issue in the motion to dismiss was sovereign immunity, and the trial court's order operates as a ruling on that issue." I disagree. The motion to dismiss included two assertions—that Butler's complaint failed to state a cause of action pursuant to Rule 12(b)(6) and that the action was barred by sovereign immunity. These are two entirely separate issues. Contrary to the majority's contention, a ruling on the 12(b)(6) issue does not constitute a ruling on the issue of sovereign immunity. Without a ruling specifically on the issue of sovereign immunity, this court lacks jurisdiction to hear

this appeal. The majority presumes that the circuit court denied the motion to dismiss this case on the basis of sovereign immunity. This court has been clear that it will not presume a ruling from the circuit court's silence, as we have held that we will not review a matter on which the circuit court has not ruled, "*and a ruling should not be presumed.*" *Alpha Mktg.*, 2012 Ark. 23, at 7, 386 S.W.3d at 404 (emphasis in original).

The circuit court did not explain its denial of the motion to dismiss in its order. Without such explanation, this court is unable to determine the basis on which the circuit court denied the motion to dismiss. As such, this court lacks jurisdiction to hear the instant appeal. Accordingly, I would dismiss this appeal without prejudice.

Special Justice ROBERT L. JONES III joins in this dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** In *Arkansas Lottery Commission v. Alpha Marketing*, 2012 Ark. 23, 386 S.W.3d 400, this court held that absent an express ruling on sovereign immunity, we did not acquire jurisdiction to hear an interlocutory appeal pursuant to Rule 2(a)(10) of the Arkansas Rules of Appellate Procedure—Civil. Rule 2(a)(10) permits an appeal from an interlocutory "order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official."

On May 4, 2015, the circuit court entered an order dismissing the Defendants' Amended Motion for Judgment on the Pleadings, which specifically requested a ruling on sovereign immunity and legislative waiver, and the Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, which asserted that Mr. Butler's complaint should be dismissed

pursuant to Arkansas Rule of Civil Procedure 12(b)(6) *and* because his cause of action was barred by sovereign immunity. However, the order only stated,

> On this 4th day of May, 2015, the *Defendants' Amended Motion for Judgment on the Pleadings* filed on March 19, 2015, and the *Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint* filed on March 25, 2015, came on for consideration. The court finds that the *Defendants' Amended Motion for Judgment on the Pleadings* and the *Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint* should be and hereby are denied.

The circuit court order did not address the adequacy of the pleading to state a cause of action under the Arkansas Whistleblower's Act as required by Rule 12(b)(6), sovereign immunity, or the issue of legislative waiver. Accordingly, we do not have before us an express ruling denying dismissal of Mr. Butler's complaint on the basis of sovereign immunity.

In *Chamberlin v. State Farm Mutual Auto Insurance Company*, 343 Ark. 392, 36 S.W.3d 281 (2001), this court described the dictates of stare decisis.

> Under the doctrine of stare decisis, we are bound to follow prior case law. The policy of stare decisis is designed to lend predictability and stability to the law. It is well-settled that "[p]recedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." Our test is whether adherence to the rule would result in "great injury or injustice."

(Internal citations omitted.) The doctrine of stare decisis requires that we remand this case to the circuit court to make an express ruling on sovereign immunity. Therefore, our options are clear: remand this case for an express ruling on sovereign immunity or overrule *Alpha Marketing*. Ignoring *Alpha Marketing* is not an option.

In my view, the most prudent course would be to overrule *Alpha Marketing* and move on to the merits of this case. Otherwise, stare decisis requires that this appeal be

dismissed because the order appealed from does not give us jurisdiction to hear this case. *Alpha Mktg.*, *supra*; Ark. R. App. P.–Civ, 2(a)(10).

*Fred Harrison* and *Matthew McCoy* Associate General Counsel, for appellant.

*Sutter & Gillham, P.L.L.C.*, by: *Luther Oneal Sutter*, for appellee.